A10A0428. GEORGIA INTERLOCAL RISK MANAGEMENT AGENCY v. GODFREY et al.
(699 SE2d 377)

ADAMS, Judge.

Under Georgia law, "motor vehicle liability insurance policies issued or delivered in this state" must include uninsured motorist

coverage that encompasses "underinsured" motorist coverage. OCGA § 33-7-11 (a) (1) & (b) (1) (D) (ii). And an insured must be given the option to reject such coverage, select minimum coverage, or select coverage up to the limits of liability under the policy. OCGA § 33-7-11 (a) (1), (3) & (b) (1) (D) (ii). The question in this case is whether these requirements apply to motor vehicle liability coverage provided by a municipality to its employees through a contract with the Georgia Interlocal Risk Management Agency ("GIRMA").

Authorized by a 1986 law, an interlocal risk management agency may be created "for the development and administration of an interlocal risk management program and one or more group self-insurance funds." OCGA § 36-85-1 (7). Chapter 85 of Title 36 of the Georgia Code authorizes municipalities and counties to jointly purchase insurance or jointly operate self-insurance programs. Ga. L. 1986, p. 1496. In this case, GIRMA operates a self-insurance program in which the city of Newnan participates. A group self-insurance fund is "a pool of public moneys established by an interlocal risk management agency from contributions of its members in order to pool the risks of general liability, motor vehicle liability, property damage, or any combination of such risks." OCGA § 36-85-1 (6). Administration of these funds includes "the processing and defense of claims brought against members of the agency." OCGA § 36-85-1 (8).

The stipulated facts show that on May 13, 2006, Daniel Godfrey, a Newnan police officer, was struck by a motor vehicle owned and operated by Hural Henderson, who had $25,000 of motor vehicle liability coverage. Godfrey and his wife filed a civil action against Henderson in state court and served a copy of the complaint on GIRMA in order to give notice that it might be held responsible as an uninsured motorist carrier pursuant to OCGA § 33-7-11. GIRMA then filed this declaratory judgment action to determine its obligation to provide such coverage. Although the GIRMA contract provides uninsured motorist coverage up to the statutorily defined limits found in OCGA § 33-7-11 (a) (1) (A), it does not provide underinsured coverage and it does not allow a covered individual the option of selecting the amount of such coverage. On these stipulated facts, the trial court held that the motor vehicle liability coverage provided by GIRMA was the substantial equivalent of an insurance policy for the purposes of OCGA § 33-7-11 and therefore subject to the statutory scheme set forth therein for insurers generally. Accordingly, the court held that GIRMA was required to allow the officer to select uninsured/underinsured coverage up to the limits of liability under the GIRMA contract, in this case $1,000,000. GIRMA appeals.

In Georgia, municipalities are protected by sovereign immunity; the legislature alone may waive it. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX; OCGA § 36-33-1 (a); *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003). Following important changes made in 2002 to several Code sections of the relevant law, municipal immunity may be waived by the purchase of liability insurance in only three situations: (1) as provided in OCGA § 33-24-51 — where the insurance covers "the negligence of any duly authorized officer, agent, servant, attorney, or employee" that causes damages "arising by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation"; (2) as provided in OCGA § 36-92-2 where the insurance covers losses arising from "the negligent use of a covered motor vehicle"; or (3) where "the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." OCGA § 36-33-1 (a). See also Ga. L. 2002, p. 579.[1] Similar to the limitation in the last scenario, under the first two scenarios, the waiver of municipal immunity is limited to the amount of coverage provided. See OCGA §§ 33-24-51 (b); 36-92-2 (b) & (d). See also *CSX Transp.*, 277 Ga. at 250 (1), n. 3.

Although when discussing the waiver of immunity OCGA § 36-33-1 speaks in terms of "the purchase of liability insurance," a portion of the 2002 legislation specifically provides that municipal liability is waived to the extent that a municipality or other local government entity "becomes a member of an interlocal risk management agency." OCGA § 36-92-2 (d) (2). Cf. *Gilbert v. Richardson*, 264 Ga. 744, 751-752 (5) (452 SE2d 476) (1994) (prior to 2002 legislation, county's purchase of GIRMA coverage waived sovereign immunity to the extent of the coverage); *Weaver v. City of Statesboro*, 288 Ga. App. 32, 35-36 (1) (653 SE2d 765) (2007) (same for municipality). But again, waiver is limited "to the extent that coverage obtained exceeds the amount of the waiver set forth in this Code section." OCGA § 36-92-2 (d) (2).

Nothing in the rest of the 2002 legislation nor any other provision of the Georgia Code indicates that the legislature intended to waive municipal immunity in order to mandate the inclusion of uninsured/underinsured coverage where it is not included in the coverage afforded by a municipality's participation in an interlocal risk management program. See also Ga. L. 2002, p. 579, § 6 ("All laws and parts of laws in conflict with this Act are repealed."). And,

---

[1] The 2002 legislation affected "OCGA §§ 33-24-51 (amended), 36-33-1 (amended), 36-92-1, [36-92]-5 (new), 40-6-6 (amended)." 19 GSU L. Rev. 243, 250 (2002).

as shown above, only the legislature may waive municipal immunity, which it has done but only to the limits of the coverage provided.

Moreover, during the debate that led to the passage of the 2002 legislation, the General Assembly twice considered amendments that would have added provisions bearing on uninsured motorist coverage, including a possible amendment to OCGA § 33-7-11. See 19 GSU L. Rev. 243, 247, 250 (2002). Both amendments were rejected. Id. Although those amendments addressed different points, it is fair to conclude that at the time, the legislature appreciated the relationship between the waiver of municipal immunity for motor vehicle liability and the statutory requirements for uninsured motorist benefits. Yet no such provision was included in the final legislation.

In short, because underinsured coverage was not provided as a part of the GIRMA motor vehicle liability coverage afforded to Newnan, any attempt to require underinsured coverage under OCGA § 33-7-11 would run afoul of Newnan's sovereign immunity.

Godfrey argues that the Supreme Court has held that a private self-insurance plan authorized by OCGA §§ 33-34-2 (4) (formerly (12)) and 33-34-5.1 (formerly OCGA § 40-9-101) must include statutorily required uninsured motorist coverage. *Twyman v. Robinson*, 255 Ga. 711 (342 SE2d 313) (1986). In *Twyman*, the Supreme Court reasoned that a self-insurance plan and authorizing certificate "serve as the substantial equivalent of a no-fault policy for the purposes of the no-fault act." Id. at 712. And "[s]ince the Uninsured Motorist Act in Georgia must be liberally construed, . . . a plan and certificate of self-insurance serve[ ] as the substantial equivalent of an insurance 'policy' for the purposes of OCGA § 33-7-11, as well." Id. Therefore, such plans must comply with that Code section.

But the statutory authority for these *private* self-insurance plans specifically requires that such plans "provide coverages, benefits, and claims-handling procedures substantially equivalent to those afforded by a policy of vehicle insurance in compliance with [Chapter 34 of Title 33]." OCGA § 33-34-5.1 (a). There is no such provision in the 2002 legislation nor in the Code sections relevant to the waiver of municipal immunity. Moreover, the legislature has provided that the Commissioner of Insurance is the sole arbiter of the contents of an interlocal risk management plan.[2] The commissioner is only required to "examine the application made under Code Section

---

[2] Self-insurance funds must be authorized by the commissioner and the commissioner is authorized to promulgate applicable rules and regulations:
> No interlocal risk management agency shall establish a group self-insurance fund or funds until such agency has been issued a certificate of authority by the Commissioner of Insurance as provided in this Code section and under such rules and regulations as the Commissioner may promulgate to assure compliance with this chapter.

36-85-5 to determine whether the agency and any established fund will be able to comply with *this chapter and applicable rules and regulations.*" (Emphasis supplied.) OCGA § 36-85-6 (a). Relevant to this case, the commissioner approved the form of coverage provided by GIRMA to its members.

Finally, municipalities are not required to seek such motor vehicle liability coverage in the first place. The Insurance Code provides that a municipality may "in its discretion" secure and provide insurance to cover liability for damages "by reason of ownership, maintenance, operation, or use of any motor vehicle by the municipal corporation." OCGA § 33-24-51 (a); accord *Williams v. Solomon*, 242 Ga. App. 807, 810 (4) (531 SE2d 734) (2000). The same is true for the decision to join GIRMA. OCGA § 36-85-2 (a). Given that a municipality has an option of providing liability coverage, it follows that it has the discretion to decide what that coverage entails.

In short, we find no authority for the conclusion that an interlocal risk management plan must include uninsured motorist coverage established in OCGA § 33-7-11.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED JULY 9, 2010 — 

*Andrew J. Whalen III*, for appellant.

*Kam, Ebersbach & Lewis, Randy J. Ebersbach, C. Bradford Sears, Jr., Charles M. Cork III*, for appellees.

OCGA § 36-85-5 (a). "The Commissioner shall have authority to promulgate rules and regulations to effectuate the provisions of this chapter." OCGA § 36-85-16. The commissioner must also approve all GIRMA contracts prior to their use:

> A copy of each contract, endorsement, and application form proposed to be issued or used in connection with each fund. Such contracts, endorsements, applications, or revisions thereto shall be filed with and approved by the Commissioner prior to their use.

OCGA § 36-85-5 (c) (12).