## A10A1372. VFH CAPTIVE INSURANCE COMPANY v. PLEITEZ.

(704 SE2d 476)

ADAMS, Judge.

This appeal presents a question of first impression concerning the interplay between the Georgia Captive Insurance Company Act ("CICA"), OCGA § 33-4-1 et seq., and OCGA § 33-7-11, the uninsured motorist statute.

The underlying facts of this case, which are undisputed, show the following: plaintiff/appellee Rigoberto Pleitez was a taxi cab driver. On May 25, 2007, his cab had a flat tire while he was driving on I-85. Pleitez pulled over into the gore area to change the tire, where he was struck by a vehicle driven by defendant Mynor Perez-Barrios, who is not a party to this appeal; Pleitez received extensive injuries as a result of this accident.

Pleitez brought suit against Perez-Barrios, and Perez-Barrios's liability carrier paid out its policy limits to Pleitez. Pleitez served a copy of the suit on his insurer, appellant VFH Captive Insurance Company, pursuant to the uninsured/underinsured motorist statute, OCGA § 33-7-11. VFH answered and denied that the policy it issued to Pleitez provided uninsured/underinsured motorist coverage, and both parties subsequently moved for summary judgment on the coverage issue. Pleitez argued that the coverage was part of the policy by operation of law because VFH had failed to offer uninsured coverage or to obtain a written rejection of coverage from him. OCGA § 33-7-11 (a) (3). VFH argued it was prohibited from offering uninsured motorist coverage by the CICA. The trial court denied VFH's motion for summary judgment and granted summary judgment to Pleitez, finding that Pleitez was entitled to uninsured motorist coverage under his policy with VFH. VFH appeals.

VFH is a captive insurance company, insuring only vehicles for hire. See OCGA § 33-41-2.[1] The types of insurance a captive insurer may offer are set forth in OCGA § 33-41-3 and include casualty insurance, specifically motor vehicle liability insurance as described in OCGA § 33-7-3. The Act requires that "[i]nsurance policies . . . issued by a captive insurance company for . . . motor vehicle accident insurance shall be in conformity with all minimum requirements for coverages and coverage amounts established by the state for such types of insurance." OCGA § 33-41-3 (b). The statute also specifies the types of risks that a captive insurance company *"may not"* insure, including risks resulting from "[a]ny personal, familial, or

---

[1] Association captive insurance companies such as VFH insure only members of an association of persons (individuals, corporations, partnerships or other associations) who are engaged "in similar or related professional, trade, or business activities. . . ." OCGA § 33-41-2 (2).

household responsibilities," OCGA § 33-41-3 (c) (1) (A), as well as risks which do not result from responsibilities arising out of the business. OCGA § 33-41-3 (c) (1) (B). Lastly, OCGA § 33-41-24 provides that "[a]ny provisions of this [Insurance] title which are inconsistent with the provisions of this chapter shall not apply to captive insurance companies."

OCGA § 33-7-11 (a) (1), the uninsured/underinsured motorist statute, provides in pertinent part that

> [n]o automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state . . . unless it contains an endorsement or provisions undertaking to pay *the insured* damages for bodily injury, . . . sustained from the owner or operator of an uninsured motor vehicle. . . .

(Emphasis supplied.) And subsection (a) (3) further provides that the coverage outlined in (a) (1) is required unless the named insured rejects the coverage in writing. Thus, it is undisputed that uninsured motorist coverage is a minimum requirement in a Georgia motor vehicle liability policy.

Despite the plain language of the uninsured motorist statute, VFH argues that a captive insurance company may not offer uninsured or underinsured motorist coverage because extending that coverage would require it to insure risks which it may not insure under the CICA (i.e., risks other than those associated with the business of the insured), and to extend that coverage to members of the insured's household. See OCGA § 33-7-11 (b) (1) (B) (broadly defining an "insured" to include members of insured's household, spouse, permissive users of the vehicle and others). Thus, VFH argues, the statutes are in conflict and, pursuant to OCGA § 33-41-24, the provisions of the uninsured motorist statute do not apply to captive motor vehicle liability policies and it may not offer or provide uninsured motorist coverage to its insureds. We reject this contention.

> The purpose of uninsured motorist legislation is to require some provision for first-party insurance coverage to facilitate indemnification for injuries to a person who is legally entitled to recover damages from an uninsured motorist, and thereby to protect innocent victims from the negligence of irresponsible drivers. Uninsured motorist statutes are remedial in nature and must be broadly construed to accomplish the legislative purpose.

(Citations and punctuation omitted.) *Smith v. Commercial Union Assurance Co.*, 246 Ga. 50, 51 (268 SE2d 632) (1980).

We begin our analysis by noting that there is nothing in the CICA that explicitly prohibits a captive insurer from offering uninsured motorist coverage. Thus the Act does not directly conflict with the requirement contained in OCGA § 33-7-11 that motor vehicle liability policies must include uninsured motorist coverage unless the insured has rejected that coverage in writing. On the other hand, the mandate contained in section 33-41-3 (b) of the CICA is explicit: "[i]nsurance policies . . . issued by a captive insurance company for . . . motor vehicle accident insurance *shall* be in conformity with all minimum requirements for coverages and coverage amounts established by the state for such types of insurance." (Emphasis supplied.) Uninsured motorist coverage, unless rejected in writing, is such a minimum requirement under Georgia law, and the General Assembly is presumed to have acted with full knowledge of that requirement in enacting the provisions of the CICA. *Retention Alternatives v. Hayward*, 285 Ga. 437 (678 SE2d 877) (2009) (in interpreting a statute, we must presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it). If the legislature had not intended for captive insurance companies to be subject to the minimum requirement of uninsured motorist coverage, it could have expressly provided for such an exclusion.[2]

Moreover, although an insurer generally cannot carve out exclusions when extending uninsured motorist coverage, see *Wagner v. Nationwide &c. Ins. Co.*, 288 Ga. App. 132 (653 SE2d 526) (2007), this Court recently recognized that other controlling statutory mandates and strictures may result in the insurer providing some uninsured motorist coverage without being subject to other provisions of the uninsured motorist statute. See *Ga. Interlocal Risk Mgmt. Agency v. Godfrey*, 305 Ga. App. 130 (699 SE2d 377) (2010) (although GIRMA policy provided uninsured motorist coverage up to the statutorily defined limits, it did not have to provide underinsured coverage or allow a covered individual the option of selecting the amount of such coverage). Thus, to the extent the uninsured motorist provisions are inconsistent with the CICA, those provisions would not apply to captive insurance companies as set forth in

---

[2] It is difficult for us to envision that the General Assembly would not intend for a group such as taxi cab drivers, who are presumably at a greater risk of an accident than the average motorist, to be offered the same uninsured motorist protection as other drivers. However, it would be useful for the legislature to clarify the extent of uninsured motorist coverage captive insurers are required to extend because it is apparent that they cannot provide the full coverage contemplated by the uninsured motorist statute.

OCGA § 33-41-24.

In any event, the accident in this case involved the named insured taxi driver, and it is undisputed that he was engaged in responsibilities arising out of his job as a taxi cab driver, not personal or family responsibilities, at the time he was injured. Thus, under the facts here, the captive insurer is not required to insure a risk that it is prohibited from insuring under the CICA.

Lastly, we note this opinion is consistent with precedent from our Supreme Court. In a somewhat analogous situation involving very similar facts, that Court held that uninsured motorist coverage will be implied in a self-insurance plan that failed to include such coverage, unless the self-insurer has filed a plan with the insurance commissioner[3] declining to include uninsured motorist coverage in the self-insurance plan. *Twyman v. Robinson*, 255 Ga. 711 (342 SE2d 313) (1986).[4] Although there are differences between the CICA and the provisions governing self-insurers, see OCGA § 33-34-5.1, we discern no differences in the overriding policy considerations at issue.

As noted at the outset, it is undisputed in this case that the policy VFH issued to Pleitez did not expressly include uninsured motorist coverage and that VFH did not obtain a written rejection of that coverage from Pleitez. Based on the foregoing, we find that the trial court did not err by finding that Pleitez was entitled to uninsured motorist coverage under his policy with VFH and thus that he was entitled to summary judgment.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 1, 2010.

*Michael J. Lober*, for appellant.
*Taylor & Viers, Richard T. Taylor*, for appellee.

---

[3] At the time the opinion was issued, the self-insurance plan was filed with the Commissioner of Public Safety. See *Proctor v. Rapid Group*, 203 Ga. App. 232, 233, n. 1 (416 SE2d 774) (1992), and cites.

[4] The Court did not explain the rationale for allowing a self-insurer to decline to provide uninsured motorist coverage "despite the language in OCGA § 33-7-11 requiring such coverage 'except where the insured rejects' it[.]" *Proctor*, 203 Ga. App. at 234 (2).