S91A1307. HIERS et al. v. CITY OF BARWICK et al.
(414 SE2d 647)

CLARKE, Chief Justice.
The Chief of Police of the City of Barwick tried to pull over a speeding car. When the speeder did not respond to the police car's blue light, the Chief of Police pursued the car in a high-speed chase. Ultimately, the car being pursued collided with a car occupied by Donald and Virginia Hiers. The Hierses sued the City and the Chief of Police. The City and Chief of Police raised the defense of sovereign

immunity. The Hierses asserted that immunity was waived to the extent of liability insurance. At the time of the accident the City was a member of the Georgia Interlocal Risk Management Agency (GIRMA), created pursuant to OCGA § 36-85-1 et seq. The City paid a premium of $8,597 to GIRMA in return for liability coverage of $500,000 per occurrence. The City nevertheless maintained that it was entitled to assert the defense of sovereign immunity. The trial court granted summary judgment in favor of the Chief of Police and the City without stating specific grounds. We reverse.

1. The Chief of Police and City assert that summary judgment in their favor was required by the passage and ratification of an amendment to Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983. They say that under the new constitutional provision sovereign and official immunity are not waived by the provision of liability insurance. They further assert that any waiver that may have existed under the previous constitutional provision was withdrawn by the passage of the new constitutional amendment. We recently rejected this argument in *Donaldson v. Dept. of Transp.*, 262 Ga. 49 (414 SE2d 638) (1992), in which we held that a waiver of sovereign immunity cannot be withdrawn after a suit is filed in reliance on that waiver. Because this suit was filed before the effective date of the constitutional amendment, the new constitutional amendment does not apply. Id.

2. The next question before the court is whether the City's participation in GIRMA, created by OCGA § 36-85-1 et seq., constitutes a waiver of sovereign immunity. Appellees first assert that Art. I, Sec. II, Par. IX of the Georgia Constitution of 1983 does not apply to municipalities. Next, they point out that OCGA § 36-85-20 states that participation in GIRMA does not constitute a waiver of immunity and does not constitute the provision of liability insurance protection under the Constitution.

Article I, Sec. II, Par. IX of the Constitution of Georgia of 1983 (prior to 1991 amendment) provides:

> Sovereign immunity extends to the state and all of its departments and agencies. . . . Also the defense of sovereign immunity is waived as to those actions for the recovery of damages for any claim against the state or any of its departments and agencies for which liability insurance protection for such claims has been provided but only to the extent of any liability insurance provided.

We held in *Toombs County v. O'Neal*, 254 Ga. 390 (330 SE2d 95) (1985) that although the constitutional insurance waiver provision does not specifically mention counties, it nevertheless applies to them.

Although we have not previously addressed whether Art. I, Sec. II, Par. IX also applies to municipalities, the reasoning of the *Toombs* case applies with equal force to municipalities. See R. P. Sentell, Jr., The Law of Municipal Tort Liability in Georgia, 4th ed., 1988, pp. 184-188. Municipalities are entitled to assert governmental or sovereign immunity when they "undertake to perform for the State duties which the State itself might perform, but which have been delegated to the municipality." *Mayor &c. of Savannah v. Jordan*, 142 Ga. 409, 410 (83 SE 109) (1914). In *Jordan* we noted that a municipality "[i]n its public character . . . acts as an agency of the State, to enable it [to] better govern that portion of [the] people residing within the municipality. . . ." Id. at 411. In 1882, this court held that a city was not liable in performing acts of a legislative or judicial nature, "for they are deemed to be a part of the state's power, and, therefore, under the same immunity." *Collins v. Mayor of Macon*, 69 Ga. 542, 544 (1882). The immunity of a municipality is derivative from the State and cannot be broader than the immunity of the State. Therefore, the constitutional provision that mandates waiver of the defense of sovereign immunity to the extent of available insurance coverage necessarily applies to municipalities and counties. *Toombs*, supra; see also *Robinson v. City of Decatur*, 253 Ga. 779 (325 SE2d 752) (1985) (Clarke, J., concurring specially). We now hold that the constitutional provision which waives immunity to the extent of insurance applies to municipalities.[1]

In light of the constitutional provision, a statute seeking to reserve sovereign immunity despite the existence of liability insurance cannot stand. In this regard the present case is indistinguishable from *Price v. Dept. of Transp.*, 257 Ga. 535 (361 SE2d 146) (1987).[2] *Price* involved a self-insurance program authorized by statute. The statute authorizing the self-insurance program had a corresponding statute that stated,

> [n]othing in this article shall constitute a waiver of the immunity of the state from any action. The exercise of authority provided in this article shall not constitute the provision of liability insurance protection under Article I, Section II, Paragraph IX of the Constitution. OCGA § 45-9-5.

This language is almost identical to OCGA § 36-85-20, the statute at

---

[1] We do not hold here that the immunity of the state, counties and municipalities are co-extensive. The Constitution provides separately in Art. IX, Sec. II, Par. IX for additional legislative waiver of the immunity of counties, school districts and municipalities.

[2] In *Price* we held that the waiver of official immunity necessarily waived sovereign immunity.

issue here. In *Price* we examined OCGA § 45-9-5 and concluded that the expressed legislative intent must give way to the mandate of the constitution. Id. at n. 2. In *Price* we rejected out of hand the assertion that the program of self-insurance did not constitute liability insurance within the meaning of the constitution. See also *Martin v. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987) (holding that self-insurance program covering employees waived the sovereign immunity of the Department of Public Safety in spite of language contained in OCGA § 45-9-5). We recently rejected a similar argument in *Litterilla v. Hosp. Auth. of Fulton County*, 262 Ga. 34 (413 SE2d 718) (1992). Here, although the legislation enacting GIRMA expresses the intent not to waive sovereign immunity, and not to allow participation in the program to constitute liability insurance, we are bound by the constitution and by *Price* to reach the contrary result. In so holding we disapprove *Adams v. Perdue*, 199 Ga. App. 476 (405 SE2d 305) (1991).

3. Because we have determined that sovereign immunity is waived in this case to the extent of available insurance, we need not address the issue of whether the actions of the Chief of Police were discretionary or ministerial.

In sum, we hold that OCGA § 36-85-20 conflicts with the Constitution of Georgia and is therefore void. The provision of liability insurance under GIRMA constitutes a waiver of sovereign immunity to the extent of available coverage.

*Judgment reversed. Clarke, C. J., Bell, Sears-Collins, JJ., and Judge J. Byron Smith concur; Hunt, J., dissents in part and concurs specially in part; Benham and Fletcher, JJ., dissent. Weltner, P. J., disqualified.*

HUNT, Justice, dissenting in part and concurring specially in part.

I disagree with the holding of Division 2 of the opinion that "the constitutional provision which waives immunity to the extent of insurance applies to municipalities." Therefore, I would disagree that both the City of Barwick and the chief of police waive immunity in this case because of the existence of liability insurance under GIRMA. However, because I would hold that the actions of the chief of police were of a ministerial nature, I would agree with the majority opinion that the judgment as to him should be reversed. That is, the claim against the chief should proceed, notwithstanding the absence of waiver of immunity by insurance.

1. The majority errs in including cities under Art. I, Sec. II, Par. IX. The error is important because of the difference in liability for negligence by cities and the state and its subdivisions, including counties.

A county is protected by sovereign immunity, except where im-

munity has specifically been waived or where a nuisance, which amounts to a taking of property without compensation, has been created. *Duffield v. DeKalb County*, 242 Ga. 432 (249 SE2d 235) (1978). On the other hand, while cities are immune in carrying out their governmental functions, they may be liable for negligence in their ministerial functions, as set out in OCGA § 36-33-1 (b):

> Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable.

Furthermore, unlike a county, which is a subdivision of the state, *Toombs County v. O'Neal*, 254 Ga. 390 (330 SE2d 95) (1985); *Hines v. Etheridge*, 173 Ga. 870, 875 (162 SE 113) (1931), a municipality is a public corporation and a creature of the legislature. See *Miree v. United States*, 242 Ga. 126, 133 (249 SE2d 573) (1978), quoting *Troup County EMC v. Ga. Power Co.*, 229 Ga. 348, 352 (191 SE2d 33) (1972). See 22 EGL 12, Municipal Corporations, § 4. Thus, cities should not be lumped along with counties into Art. I, Sec. II, Par. IX. While the majority protests in a footnote that it does not intend to do away with the traditional differences between county and municipal liability, that may well be the inadvertent result. Also raised are questions whether cities should properly be included under any state tort claims act that may be enacted.

However, under Art. IX, Sec. II, Par. IX, "the General Assembly may waive the immunity of counties, municipalities, and school districts by law." In 1986, the legislature did just that by enacting OCGA § 36-33-1 (a):

> there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages. A municipal corporation shall not waive its immunity by the purchase of liability insurance, . . . *unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available,* and then only to the extent of the limits of such insurance policy.

(Emphasis supplied.) Thus, insofar as a municipality is immune from suit, OCGA § 36-33-1 (b), the defense is waived if insurance is provided.

The City contends, however, that the act creating the GIRMA specifically provides "[t]he participation by a municipality . . . shall not constitute the obtaining of liability insurance and no sovereign immunity shall be waived on account of such participation." OCGA §

36-85-20. While we held that the state employees' self-insurance fund was "insurance" for purposes of waiver in *Martin v. Dept. of Public Safety*, 257 Ga. 300 (357 SE2d 569) (1987), and *Price v. Dept. of Transp.*, 257 Ga. 535, 536 (361 SE2d 146) (1987), despite a similar provision attempting to preserve immunity in OCGA § 45-9-5, the result was dependent on the conflict between that statute and the waiver in Art. I, Sec. II, Par. IX of the 1983 Constitution. *Price v. Dept. of Transp.*, supra, 257 Ga. 536, n. 1. Here, both the insurance waiver and the preservation of immunity are found in separate statutes. Thus, participation in the GIRMA, OCGA § 36-85-1 et seq., is not in conflict with a constitutional provision and there is no waiver of the city's immunity.[3]

2. The result of Division 1, above, is that the City of Barwick may rely upon its defense of sovereign immunity because there is no liability insurance as contemplated by the constitutional authority provided in Art. IX, Sec. II, Par. IX. I disagree, however, that the chief of police is entitled to similar immunity. Without insurance, the inquiry as to the chief of police involves whether his conduct with respect to this occurrence was discretionary or ministerial. Under *Logue*, supra, it would appear his acts were discretionary, but I think we were wrong in *Logue*. There we held that because *some* judgment was involved in the determination by the patrolman whether to engage in a high-speed approach to the scene of an incident, that his actions were necessarily discretionary. I disagree with that proposition.

Whether the act of an official is discretionary or ministerial is a question of law and is not necessarily resolved by deciding whether the official had *some* discretion or judgment. Otherwise, every function would be immune from legal action because virtually all human endeavors involve some type of discretion. Even where an official's duties involve primarily discretionary acts, if the particular act in question is more properly characterized as ministerial, qualified immunity does not apply. *Cooper v. Swofford*, 184 Ga. App. 50, 52 (360 SE2d 624) (1987). To be sure, the distinction between discretionary and ministerial is often hazy and the fact-sensitive, case-by-case approach taken by our appellate courts has led to results which often appear inconsistent. But, the proper test is whether the reasonableness of the official's *acts* or *policies* are in question. If the latter, the official is beyond the reach of the courts under separation of powers principles and is protected by immunity. Acts performed without such reasoned judgment or discretion as to the propriety of the action

---

[3] In *Logue v. Wright*, 260 Ga. 206 (392 SE2d 235) (1990), the self-insurance fund was held to be unauthorized and thus could not have waived the sovereign immunity of the participating counties. Here, the risk fund is authorized.

taken are ministerial:

> If there is a readily ascertainable standard by which the action of the government servant may be measured, whether that standard is written or the product of experience, it is not within the discretionary function exception.

57 AmJur2d 132, Municipal, County, School and State Tort Liability, § 120 (1988).[4] See generally 5 Harper, James & Gray, The Law of Torts, § 29.11 at pp. 693-695 (2d ed. 1986); Restatement 2d Torts, § 895 D.

The conduct of the chief of police of the City of Barwick did not involve policymaking nor planning. It involved the implementation of policy and planning and, notwithstanding the exercise of some judgment on his part, it was ministerial as opposed to discretionary. Therefore, I would reverse the Court of Appeals and the trial court and permit the claim against the chief of police.

BENHAM, Justice, dissenting.

1. I concur fully in the conclusion drawn by Justice Hunt in the dissent portion of his opinion that the city's immunity remains intact, and in the reasoning and analysis leading to that conclusion. Accordingly, I would affirm the grant of summary judgment to the city.

2. With regard to the liability of the individual defendant, however, I believe this court should be guided by the doctrine of stare decisis and should adhere to the holding in *Logue v. Wright*, 260 Ga. 206 (1) (392 SE2d 235) (1990). Application of the holding in that case to the facts of this case requires the conclusion that the individual defendant's acts were discretionary acts for which he is immune from suit. I would, therefore, affirm the grant of summary judgment to the individual defendant.

3. I also write separately to note that my position with regard to *Donaldson v. Dept. of Transp.*, 262 Ga. 49 (414 SE2d 638) (1992), is that expressed in Justice Weltner's dissenting opinion in that case, with which I joined.

I am authorized to state that Justice Fletcher joins in Divisions 1 and 2 of this dissent.

---

[4] This distinction is referred to by a majority of the states as the planning versus operational test. Judicial review of the former would appear to violate the doctrine of separation of powers. Operational decisions do not involve the same policy considerations and can be reviewed under "judicially manageable tort standards of due care and reasonableness." 57 AmJur2d 133, Municipal, County, School and State Tort Liability, § 121.

DECIDED MARCH 19, 1992 —
RECONSIDERATION DENIED APRIL 2, 1992.

*Short & Fowler, James M. Bivins,* for appellants.
*Alexander & Vann, William C. Sanders,* for appellees.