S10G1902. GODFREY et al. v. GEORGIA INTERLOCAL RISK MANAGEMENT AGENCY.

(719 SE2d 412)

HINES, Justice.

This Court granted a writ of certiorari to the Court of Appeals to consider whether that Court properly determined that a municipality's motor vehicle liability coverage secured through an interlocal risk management agency is not statutorily obligated to satisfy the requirements for uninsured and underinsured motorist coverage that are applied to commercial insurance policies and private self-insurance plans. See *Georgia Interlocal Risk Management Agency v. Godfrey*, 305 Ga. App. 130 (699 SE2d 377) (2010). Finding that the Court of Appeals reached the correct conclusion, we affirm.

This case arises from an automobile collision in which Daniel Godfrey, a police officer employed by the City of Newnan, was driving a City police car when it was struck by a motor vehicle owned and operated by Hural Henderson, who had $25,000 of motor vehicle liability coverage. The City of Newnan had a Member Coverage Agreement (the "Agreement") with the Georgia Interlocal Risk Management Agency ("GIRMA"), established under OCGA § 36-85-1 et seq. Godfrey and his wife sued Henderson in tort, and served a copy of the complaint on GIRMA to notify GIRMA that it might be held responsible as an uninsured motorist carrier pursuant to OCGA § 33-7-11.[1] GIRMA filed a declaratory judgment action to determine its

---

[1] In pertinent part, OCGA § 33-7-11 reads:

(a) (1) No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured, or for injury to or destruction of property of an insured under the named insured's policy sustained from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:

(A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident, and $25,000.00 because of injury to or destruction of property; or

(B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one

obligation to provide such coverage, contending that the Agreement

accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy issued by the insurer to the insured if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph. In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability.

. . .

(b) (1) As used in this Code section, the term:

. . .

(D) "Uninsured motor vehicle" means a motor vehicle, other than a motor vehicle owned by or furnished for the regular use of the named insured, the spouse of the named insured, and, while residents of the same household, the relative of either, as to which there is:

(i) No bodily injury liability insurance and property damage liability insurance;

(ii) Bodily injury liability insurance and property damage liability insurance and the insured has uninsured motorist coverage provided under the insured's motor vehicle insurance policy; the motor vehicle shall be considered uninsured, and the amount of available coverages shall be as follows:

(I) Such motor vehicle shall be considered uninsured to the full extent of the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policies, and such coverages shall apply to the insured's losses in addition to the amounts payable under any available bodily injury liability and property damage liability insurance coverages. The insured's uninsured motorist coverage shall not be used to duplicate payments made under any available bodily injury liability insurance and property damage liability insurance coverages but instead shall be available as additional insurance coverage in excess of any available bodily injury liability insurance and property damage liability insurance coverages; provided, however, that the insured's combined recovery from the insured's uninsured motorist coverages and the available coverages under the bodily injury liability insurance and property damage liability insurance on such uninsured motor vehicle shall not exceed the sum of all economic and noneconomic losses sustained by the insured. For purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage;

(II) Provided, however, that an insured may reject the coverage referenced in subdivision (I) of this division and select in writing coverage for the occurrence of sustaining losses from the owner or operator of an uninsured motor vehicle that considers such motor vehicle to be uninsured only for the amount of the difference between the available cov-

did not contemplate the underinsured coverage the Godfreys sought.[2] The trial court found that the coverage provided by GIRMA was, for the purposes of OCGA § 33-7-11, the equivalent of an insurance policy.

erages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle and the limits of the uninsured motorist coverages provided under the insured's motor vehicle insurance policies; and, for purposes of this subdivision, available coverages under the bodily injury liability insurance and property damage liability insurance coverages on such motor vehicle shall be the limits of coverage less any amounts by which the maximum amounts payable under such limits of coverage have, by reason of payment of other claims or otherwise, been reduced below the limits of coverage; and

(III) Neither coverage under subdivision (I) nor (II) of this division shall be applicable if the insured rejects such coverages as provided in paragraph (3) of subsection (a) of this Code section. For private passenger motor vehicle insurance policies in effect on January 1, 2009, insurers shall send to their insureds who have not rejected coverage pursuant to paragraph (3) of subsection (a) of this Code section a notice at least 45 days before the first renewal of such policies advising of the coverage options set forth in this division. Such notice shall not be required for any subsequent renewals for policies in effect on January 1, 2009, or for any renewals for policies issued after January 1, 2009. The coverage set forth in subdivision (I) of this division need not be provided in or supplemental to a renewal policy where the named insured has rejected the coverage set forth in subdivision (I) of this division and selected the coverage set forth in subdivision (II) of this division in connection with a policy previously issued to said insured by the same insurer;

(iii) Bodily injury liability insurance and property damage liability insurance in existence but the insurance company writing the insurance has legally denied coverage under its policy;

(iv) Bodily injury liability and property damage liability insurance in existence but the insurance company writing the insurance is unable, because of being insolvent, to make either full or partial payment with respect to the legal liability of its insured, provided that in the event that a partial payment is made by or on behalf of the insolvent insurer with respect to the legal liability of its insured, then the motor vehicle shall only be considered to be uninsured for the amount of the difference between the partial payment and the limits of the uninsured motorist coverage provided under the insured's motor vehicle insurance policy; or

(v) No bond or deposit of cash or securities in lieu of bodily injury and property damage liability insurance.

. . .

[2] Henderson's insurer agreed to tender the limits of Henderson's policy in the underlying tort action.

As a consequence, the trial court ruled, GIRMA was required to provide the Godfreys, as defined "members" under the Agreement, the opportunity to select or reject uninsured motorist coverage up to the limits of liability under the GIRMA contract, and, as that opportunity had not been accorded, GIRMA was obligated to provide uninsured motorist protection up to the limits of the Agreement, which was $1,000,000. See *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709, 713 (3) (300 SE2d 673) (1983). On appeal, the Court of Appeals found no authority for the conclusion that an interlocal risk management program such as that offered by GIRMA must include UM coverage pursuant to OCGA § 33-7-11, and reversed.

The Godfreys contend that the Agreement is governed by all statutes pertaining to private motor vehicle insurance contracts, and argue that the Court of Appeals "went astray" in analyzing this situation in the context of sovereign immunity. But, GIRMA and its liability coverage contracts, and the requirements imposed thereon by statute, exist solely in the context of sovereign immunity, and the statutory waiver thereof.

Sovereign immunity applies to municipalities, unless the General Assembly waives it by law. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. Waiver of a municipality's sovereign immunity in tort law is narrow, and only the General Assembly has the authority to enact a law that specifically provides for such a waiver. *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003). Any waiver of sovereign immunity " 'is solely a matter of legislative grace. (Cit.)' [Cit.]" Id. at 250. There is no authority for a waiver of sovereign immunity beyond the legislative scheme. Id. And, this Court has consistently held that the purchase of a GIRMA coverage agreement as authorized by OCGA § 36-85-1 et seq., constitutes the purchase of liability insurance for purposes of the waiver of sovereign immunity, and does so *to the extent of the liability coverage purchased*. See *CSX*, supra at 251 (2) ("the legislature has provided that municipal sovereign immunity may be waived only by the purchase of liability insurance . . . and then *only to the extent of the limits of such insurance policy*. OCGA § 36-33-1 (a).") (Punctuation and footnote omitted; emphasis supplied.); *Gilbert v. Richardson*, 264 Ga. 744, 751-752 (5) (452 SE2d 476) (1994) ("the county has waived its sovereign immunity *to the extent of its liability coverage*") (Emphasis supplied.); *Hiers v. City of Barwick*, 262 Ga. 129, 132 (3) (414 SE2d 647) (1992), abrogation on other grounds recognized by *City of Thomaston v. Bridges*, 264 Ga. 4 (439 SE2d 906) (1994) ("sovereign immunity is waived in this case *to the extent of available insurance* . . . .") (Emphasis supplied.) It is uncontroverted that the stated limits of the Agreement do not cover the underinsurance obligation sought here.

Nonetheless, the Godfreys argue that GIRMA coverage agreements must be considered as being placed in the same statutory scheme as private motor vehicle liability insurance contracts in order to equalize the positions of all those who are harmed by negligent drivers. But, there is no statutory authority supporting the conclusion that such was intended by the General Assembly's narrow waiver of municipal liability through the mechanism that GIRMA represents. Rather, the statutes belie such an intent. OCGA § 36-85-4 reads:

> An interlocal risk management agency created pursuant to this chapter is not an insurance company or an insurer under Title 33, and the development and administration by such agency of one or more group self-insurance funds shall not constitute doing business as an insurer.

Although the Godfreys describe OCGA § 36-85-4 as merely "nominally excluding" GIRMA from the arena of commercial insurance policies, the General Assembly's enactment must be given weight. See *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 93 (327 SE2d 188) (1985). In contrast to the clear legislative intent that the contracts entered into by GIRMA are not to be treated as those of an "insurer," the statutory requirement that the Godfreys would impose on GIRMA's contract specifically references insurers. OCGA § 33-7-11 (a) (1) reads:

> No automobile liability policy or motor vehicle liability policy shall be issued or delivered in this state to the owner of such vehicle or *shall be issued or delivered by any insurer licensed in this state* upon any motor vehicle then principally garaged or principally used in this state unless it contains an endorsement or provisions undertaking to pay the insured damages for bodily injury, loss of consortium or death of an insured, or for injury to or destruction of property of an insured under the named insured's policy sustained from the owner or operator of an uninsured motor vehicle, within limits exclusive of interests and costs which at the option of the insured shall be:
>
> (A) Not less than $25,000.00 because of bodily injury to or death of one person in any one accident, and, subject to such limit for one person, $50,000.00 because of bodily injury to or death of two or more persons in any one accident, and $25,000.00 because of injury to or destruction of property; or

(B) Equal to the limits of liability because of bodily injury to or death of one person in any one accident and of two or more persons in any one accident, and because of injury to or destruction of property of the insured which is contained in the insured's personal coverage in the automobile liability policy or motor vehicle liability policy *issued by the insurer* to the insured if those limits of liability exceed the limits of liability set forth in subparagraph (A) of this paragraph. In any event, the insured may affirmatively choose uninsured motorist limits in an amount less than the limits of liability.

(Emphasis supplied.) Thus, to apply the statutory provision upon which the Godfreys rely would be inconsistent with the General Assembly's explicit declaration that GIRMA is not an insurer.

Nor does *Twyman v. Robinson*, 255 Ga. 711, 712 (342 SE2d 313) (1986), alter the result. As the Court of Appeals noted, that opinion deals with private self-insurance plans, created under different statutory authority than that which governs GIRMA, and, as discussed supra, no statute requires that the City of Newnan's Agreement with GIRMA meet the uninsured and underinsured motorist coverage requirements that an insurance policy issued by an insurer must meet.

The Godfreys argue that had the General Assembly wished to exclude GIRMA from the operation of OCGA § 33-7-11, it could have so stated. However, had the General Assembly wished that the narrow waiver of sovereign immunity effectuated through GIRMA encompass the regulations of OCGA § 33-7-11, it would have affirmatively specified so. Without such a specific stated intent, the assertion that additional terms are implicit in the Agreement must fail. The Agreement is limited to its express terms and does not include the underinsured motorist protection that the Godfreys seek.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., Carley, P. J., and Benham, J., who dissent.*

HUNSTEIN, Chief Justice, dissenting.

Because I believe that the City of Newnan's agreement with GIRMA should be governed by the statutory requirements for uninsured motorist coverage applicable to commercial and private self-insurance plans, I must respectfully dissent.

As the Court of Appeals duly recognized, GIRMA operates a self-insurance program in which the City of Newnan participates. A self-insurance program is "a pool of public moneys established by an

interlocal risk management agency from contributions of its members in order to pool the risks of general liability, motor vehicle liability, property damage, or any combination of such risks." OCGA § 36-85-1 (6). Simply put, GIRMA, as a self-insurance program, operates like any other property or casualty insurance company.

This Court has held that self-insurance serves as the substantial equivalent of an insurance "policy" for the purposes of OCGA § 33-7-11. *Twyman v. Robinson*, 255 Ga. 711, 712 (342 SE2d 313) (1986). Georgia law provides that motor vehicle liability policies must include uninsured motorist coverage unless the insured has rejected that coverage in writing. OCGA § 33-7-11. As such, unless a member of a self-insurance plan rejects the minimum uninsured coverage in writing, coverage will be implied as contained in the plan. Id. Here, there has been no rejection in writing or otherwise.

The fact that OCGA § 36-85-4 states GIRMA is not an insurer is not decisive. Private self-insurance plans are not "insurers" either, yet we held in *Twyman* that private self-insurance plans must provide the same uninsured and underinsured motorist coverage required of commercial insurers. We recognized that

> the sole purpose of self-insurance is to relieve self-insurers of the burden of expending their assets on insurance premiums; self-insurance is not a means by which self-insurers may avoid the claims of those individuals for whose protection the insurance laws have been enacted.

*Twyman*, supra, 255 Ga. 711, 712. Here, the policy considerations are no different.

Therefore, there is no logical reason to exclude GIRMA from the requirements of other self-insurance plans because it does not differ in any significant way from private self-insurance plans. The statutory scheme creating GIRMA identifies it as a self-insurance program. OCGA § 36-85-1 (7), (8). We have previously held that a county's purchase of GIRMA liability coverage constitutes the purchase of insurance as contemplated by OCGA § 33-24-51 (b). *Gilbert v. Richardson*, 264 Ga. 744 (5) (452 SE2d 476) (1994). Group self-insurance funds established by GIRMA are regulated by the Commissioner of Insurance. OCGA § 36-85-5. GIRMA's fund investments are even "subject to the same terms, conditions, and limitations which apply to property and casualty insurance companies under Title 33." OCGA § 36-85-8. Considering all these factors likening GIRMA coverage to other types of insurance, it does not make sense to exempt it from certain requirements that all other self-insurance programs have to meet.

Finally, the majority's discussion on sovereign immunity does

not apply. The purpose of sovereign immunity is to protect governments at all levels from unconsented-to legal actions. Allowing GIRMA to offer group self-insurance plans without the requisite uninsured motorist coverage does nothing to protect the City of Newnan nor the individual for whose protection the insurance laws have been enacted. Rather, the majority's opinion operates to protect GIRMA, which is not entitled to protection under the laws of sovereign immunity.

The real issue here is whether the City of Newnan was afforded the same rights to purchase protection from uninsured and underinsured motorists as any other purchaser of insurance. Despite the fact that the coverage the City of Newnan purchased from GIRMA is self-insurance and that self-insurance is the substantial equivalent of an insurance policy for the purposes of Georgia's insurance laws, the City was not given the same opportunity to purchase uninsured motorist coverage as other purchasers in the state. As Georgia's insurance laws require that each motor vehicle policy issued in the state include uninsured motorist coverage unless the insured has rejected such coverage in writing, I would hold that where a municipality has elected to purchase liability insurance whether from a commercial insurer or an interlocal risk management agency, it must be given the opportunity to accept or reject the same level of coverage offered to other purchasers of insurance.

I am authorized to state that Presiding Justice Carley and Justice Benham join in this dissent.

DECIDED OCTOBER 17, 2011 —
RECONSIDERATION DENIED NOVEMBER 30, 2011.

*Kam, Ebersbach & Lewis, Randy J. Ebersbach, Charles M. Cork III,* for appellant.
*Andrew J. Whalen III, Leigh C. Hancher, Sanders, Haugen & Sears, C. Bradford Sears, Jr.,* for appellee.