**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0348. GRAVITT et al. v. OLENS.

ANDREWS, Presiding Judge.

Samuel S. Olens, Attorney General of the State of Georgia, brought a civil action in the Forsyth County Superior Court pursuant to OCGA § 50-14-5 of the Open Meetings Act (OMA) (OCGA § 50-14-1 et seq.) seeking to enforce the OMA. The action against the City of Cumming and the City's Mayor, H. Ford Gravitt, individually,[1] alleged negligent violations of the OMA by refusal to allow a member of the public to attend and videotape a meeting of the City Council, and sought the imposition of civil penalties and the award of attorney fees pursuant to the OMA. The

---

[1] The action also named Gravitt as a defendant in his official capacity as Mayor of the City. The suit against Gravitt in his official capacity as the City's Mayor asserted an action against the City. *Cameron v. Lang*, 274 Ga. 122, 126 (549 SE2d 341) (2001).

trial court: (1) denied the defendants' motion to dismiss the action on the basis of sovereign and official immunity, and (2) granted summary judgment in favor of the Attorney General, ruling that the defendants violated the OMA, and imposing civil penalties and attorney fees against the defendants pursuant to the OMA. The City and Gravitt appeal. For the following reasons, we affirm in part, reverse in part, and remand.

On April 17, 2012, Mayor Gravitt convened a scheduled meeting of the Cumming City Council, and a member of the public, Nydia Tisdale, was in attendance at the meeting with a camera she was using to videotape the meeting. After the meeting was convened, it is undisputed that Gravitt announced that videotaping the meeting was prohibited, and, at Gravitt's direction, the City's Chief of Police removed Tisdale's camera, and the tripod on which it was mounted, from the meeting area and prevented Tisdale from videotaping the meeting with the camera. According to Gravitt, he did not order that Tisdale be removed from the meeting, and she was not removed from the meeting. A City police officer testified that, at the Mayor's direction, the camera and tripod were moved to the rear of the meeting area, at which point Tisdale left the meeting and appeared to make a cell phone call, and that Tisdale then returned to the meeting and started using a different handheld video camera to

2

record the meeting. The officer said that, without further direction from Gravitt, he approached Tisdale and reminded her that the Mayor had asked her not to record the meeting, but that he took no action to stop Tisdale from recording the meeting with the second camera, and that she appeared to continue recording. The City's Chief of Police stated that Tisdale initially resisted the removal of her video camera and tripod by shouting at the Mayor, and that, because of this resistance, he asked her to step outside the meeting so he could explain the removal to her without disturbing the meeting. According to the Chief of Police, when he moved Tisdale's camera to the rear of the room, Tisdale ceased her resistance; that he no longer felt it was necessary at that point to explain the removal to Tisdale outside the meeting; that no one physically touched Tisdale; and that neither he nor anyone else required that Tisdale leave the meeting. Tisdale provided an affidavit in which she testified that Mayor Gravitt ignored her protests that his order to remove her video camera violated the OMA; that the Chief of Police and his deputy "then forcibly and physically removed both me and my video camera from the auditorium's meeting area" while Gravitt watched and made no attempt to stop the officers. Tisdale further stated in her affidavit that,

after being forcibly removed from the meeting, I was able to return and observed the remainder of the meeting . . . [but while doing so] I attempted to photograph and take short film clips (without sound) of the meeting using [another] camera. I did so from the front row of the meeting auditorium and in direct view of Mayor Gravitt as he continued to conduct the meeting. Yet, I was ordered to stop this recording before the meeting ended by [a City police officer]. Mayor Gravitt observed this order, but did not insist that I be permitted to continue recording the meeting on my camera.

It is undisputed that the OMA provided for the City Council meeting to be "open to the public"; that "[t]he public at all times shall be afforded access to meetings declared open to the public"; and that "[v]isual and sound recording during open meetings shall be permitted." OCGA § 50-14-1 (a), (b), (c). The OMA further provided pursuant to OCGA § 50-14-5 (a) that

> [t]he superior courts of this state shall have jurisdiction to enforce compliance with the provisions of this chapter . . . [and that,] [i]n addition to any action that may be brought by any person, firm, corporation, or other entity, the Attorney General shall have authority to bring enforcement actions, either civil or criminal, in his or her discretion as may be appropriate to enforce compliance with this chapter.

Pursuant to this authority, Attorney General Olens brought the present civil enforcement action against the City of Cumming and Mayor Gravitt, individually, alleging that the defendants violated the OMA by prohibiting Tisdale from videotaping the City Council meeting and by removing Tisdale from the meeting. The

4

enforcement action sought the imposition of civil penalties for negligent violation of the terms of the OMA (OCGA § 50-14-6) as well as the award of attorney fees on the basis that the actions taken in violation of the OMA were without substantial justification. OCGA § 50-14-5 (b).

1. We find no merit to the City's contention that it was entitled to assert sovereign immunity to bar the OMA enforcement action brought by the Attorney General on behalf of the State of Georgia.

"Sovereign immunity applies to municipalities, unless the General Assembly waives it by law. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX." *Godfrey v. Ga. Interlocal Risk Mgmt. Agency*, 290 Ga. 211, 214 (719 SE2d 412) (2011); *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (769 SE2d 320) (2015); *CSX Transp., Inc. v. City of Garden City*, 277 Ga. 248, 249 (588 SE2d 688) (2003) ("[T]he legislature has the authority to enact a law that specifically waives a municipality's sovereign immunity."). For example, in the context of tort liability, OCGA § 36-33-1 (a) provides a narrow waiver of a municipality's sovereign immunity by the purchase of liability insurance.[2] *CSX Transp.*, 277 Ga. at 249-250; *Godfrey*, 290 Ga. at 214.

_____

[2] A "municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2 or unless the policy of insurance issued covers an occurrence for which the defense of

Moreover, OCGA § 36-33-1 (b) also provides a limited waiver of sovereign immunity as follows: "Municipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable." As currently set forth in OCGA § 36-33-1 (b), "[t]his provision has for more than a century been interpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties." *Mitcham*, 296 Ga. at 577-578. Because the acts at issue in this case were taken in the course of conducting a City Council meeting, they were acts of a public nature taken in the performance of a governmental function, and, in the absence of a specific waiver of immunity, the City would ordinarily be entitled to assert the bar of sovereign immunity. Nevertheless, we find that, because the City derives its sovereign immunity from the State, the City had no immunity that it could assert to bar an OMA enforcement action brought by the State.

sovereign immunity is available, and then only to the extent of the limits of such insurance policy." OCGA § 36-33-1 (a).

6

As a municipal corporation, the City of Cumming "is a political subdivision of the State, and is a public corporation, having for its object the administration of a portion of the power of government delegated to it [by the State] for such purpose." *Spence v. Rowell*, 213 Ga. 145, 148 (97 SE2d 350) (1957). A municipality "is held to be a portion of the sovereign power of the State" (*Penick v. Foster*, 129 Ga. 217, 221 (58 SE 773) (1907)), and "in its public character acts as an agency of the State" while exercising governmental functions within its jurisdiction. *Hiers v. City of Barwick*, 262 Ga. 129, 131 (414 SE2d 647) (1992) (punctuation and citation omitted), abrogation on other grounds recognized by *City of Thomaston v. Bridges*, 264 Ga. 4 (439 SE2d 906) (1994); *Mitcham*, 296 Ga. at 579 (while performing governmental duties, municipal corporation exercises powers pertaining to its "delegated sovereignty."). Accordingly, "[t]he [sovereign] immunity of a municipality is derivative from the State," and may be asserted when the municipality "undertake[s] to perform for the State duties which the State itself might perform, but which have been delegated to the municipality." *Hiers*, 262 Ga. at 131. Sovereign immunity as applied to a municipality pursuant to the Georgia Constitution (Ga. Const. of 1983, Art. IX, Sec. II, Par. IX) is not direct or inherent in the municipality, but derives from the State's delegated sovereignty. *Hiers*, 262 Ga. at 131; *Mitcham*, 296 Ga. at 579.

7

It follows that "it would be illogical to allow a municipality sued by the state to assert its [sovereign] immunity against the very source of that immunity." 18 McQuillin, The Law of Municipal Corporations, § 53:71 (3d ed.); *State v. City of Bowling Green*, 313 NE2d 409, 411-412 (Ohio 1974) (because municipal immunity derives from the state, and arises when performing governmental function as agent for the state, this prevents municipality from asserting immunity when sued by the state); *Bd. of Ed. of Prince George's County v. Town of Riverdale*, 578 A2d 207, 210 (Md. App. 1990) (same). In the present action, the Attorney General, acting on behalf of the State of Georgia, brought a civil action against the City of Cumming to enforce the OMA. We conclude that the City was not entitled to claim that the sovereign immunity it derived from the State barred the State's OMA enforcement action. This is not a judicially created waiver of the City's sovereign immunity under these circumstances – sovereign immunity as applied under the Georgia Constitution may be waived only by legislative act or by the Constitution itself. *State Dept. of Corrections v. Developers Surety & Indem. Co.*, 295 Ga. 741, 744 (763 SE2d 868) (2014). Rather, we find as a matter of law that, because the City derives its sovereign immunity from the State, and because the State's own immunity cannot be asserted against the State, the City had no immunity which could be asserted to bar the State's enforcement

8

action.[3] Although the trial court relied on other reasoning to find that the City's sovereign immunity did not bar the action, we affirm the court on this issue under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002). In denying the defendants' motion to dismiss, and in granting summary judgment in favor of the Attorney General, the trial court correctly ruled that sovereign immunity did not bar the OMA enforcement action against the City.

2. Mayor Gravitt contends that the trial court erred by ruling that official immunity did not bar the action brought against him in his individual capacity.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed

[3] Even assuming that the City possessed sovereign immunity which it could assert against the State, we find that this immunity was waived by the legislature's enactment of the OMA, which specifically gave the Attorney General the right to bring the present enforcement action. OCGA § 50-14-5 (a); *Colon v. Fulton County*, 294 Ga. 93, 95-96 (751 SE2d 307) (2013) (finding waiver of sovereign immunity where, by the enactment of the whistleblower statute at OCGA § 45-1-4, the legislature specifically created a right of action, and entitlement to damages, against a governmental entity that would have otherwise been barred by sovereign immunity); Ga. Const of 1983, Art. IX, Sec. II, Par. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law."); *CSX Transp. Inc.*, 277 Ga. at 249.

> or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

*Cameron v. Lang*, 274 Ga. 122, 123 (549 SE2d 341) (2001) (citations and punctuation omitted). It follows that Gravitt was entitled to official immunity from personal liability for the negligent performance of discretionary acts within the scope of his authority as City Mayor; he may be personally liable if he negligently performed a ministerial act, or acted with actual malice or an intent to injure. Id. at 125 (applying official or qualified immunity to city employees under the same standards applied to county employees); see Ga. Const of 1983, Art I, Sec. II, Par. IX (d) (applicable to counties). The Attorney General's civil enforcement action did not allege that Gravitt acted with actual malice or an intent to injure; rather, it sought the imposition of civil penalties under OCGA § 50-14-6[4] on the basis that Gravitt

---

[4] "[T]he natural and reasonable reading of OCGA § 50–14–6 is that the General Assembly recognized that decisions to comply, or not, with the [OMA] are made by individuals, or "persons," who are held accountable by the provisions of that Code section." *Lue v. Eady*, 2015 WL 3655127 at *8 (Ga. June 15, 2015).

10

negligently violated the terms of the OMA.[5] Accordingly, the issue is whether the alleged negligent actions involved discretionary or ministerial action.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

*Banks v. Happoldt*, 271 Ga. App. 146, 149 (608 SE2d 741) (2004) (citations and punctuation omitted). "The determination of whether an action is discretionary or ministerial depends on the character of the specific actions complained of, not the general nature of the job, and is to be made on a case-by-case basis." *Davis v. Effingham County Bd. of Commrs.*, 328 Ga. App. 579, 584-585 (760 SE2d 9) (2014) (citation and punctuation omitted). The mere fact that a complained-of act was simple

---

[5] Even if Gravitt intended to do the acts at issue, to remove official immunity based on actual malice or an intent to injure requires more than the intent to do an act which caused an alleged injury. *Kidd v. Coates*, 271 Ga. 33 (518 SE2d 124) (1999). "[I]n the context of official immunity, actual malice requires a deliberate intention to do wrong" that is consistent with a "deliberate or premeditated design to inflict injury." *Adams v. Hazelwood*, 271 Ga. 414, 414-415 (520 SE2d 896) (1999) (punctuation and citation omitted). Merely harboring ill will or having bad feelings about the person at issue is not sufficient. Id. at 415. No evidence in the record shows that Gravitt acted with actual malice or an intent to injure.

11

and definite does not make it ministerial; for an act to be ministerial, "it must be done in the execution of a specific duty." *Roper v. Greenway*, 294 Ga. 112, 114 (751 SE2d 351) (2013) (citation and punctuation omitted). For example, "[a] ministerial duty may be established by evidence such as a written policy, an unwritten policy, a supervisors's specific directive, or a statute." Id. at 114-115 (citations and punctuation omitted). But "[p]rocedures or instructions [in a policy or a statutory directive] adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty." Id. at 115 (citation and punctuation omitted); *Murphy v. Bajjani*, 282 Ga. 197, 199 (647 SE2d 54) (2007).

As set forth in OCGA § 50-14-1 (c), "[t]he public at all times shall be afforded access to meetings declared open to the public pursuant to [the OMA, and] [v]isual and sound recording during open meetings shall be permitted." We conclude that the actions mandated by this statutory directive are ministerial because it is "so clear, definite and certain as merely to require the execution of a relatively simple, specific duty" in accordance with the OMA. See *Roper*, 294 Ga. at 115. Moreover, "it is reasonable to expect appellants in the proper performance of their duties to possess sufficient knowledge of the [OMA] so as to enable them to recognize [and comply

12

with these OMA directives]." *Hicks v. McGee*, 289 Ga. 573, 577, n. 8 (713 SE2d 841) (2011). Accordingly, to the extent Gravitt took action which negligently violated the above directives, his actions were ministerial, and he was not entitled to official immunity. In denying the defendants' motion to dismiss, and in granting summary judgment in favor of the Attorney General, the trial court correctly ruled that official immunity did not bar the OMA enforcement action brought against Mayor Gravitt, individually.

3. The City of Cumming claims that the trial court erred in finding that the City is a "person" subject to imposition of civil penalties pursuant to OCGA § 50-14-6.

The trial court assessed civil penalties against the City pursuant to OCGA § 50-14-6 of the OMA, which provides that:

> Any person knowingly and willfully conducting or participating in a meeting in violation of this chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00. Alternatively, a civil penalty may be imposed by the court in any civil action brought pursuant to this chapter against any person who negligently violates the terms of this chapter in an amount not to exceed $1,000.00 for the first violation. A civil penalty or criminal fine not to exceed $2,500.00 per violation may be imposed for each additional violation that the violator commits within a 12 month period from the date that the first penalty or fine was imposed. It shall be a defense to any criminal action under this Code section that a person has acted in good faith in his or her actions.

13

It is undisputed that the City of Cumming is a type of corporation – a municipal corporation. Thus, the issue is whether the trial court correctly interpreted the term "person" in the statute to include the City as a municipal corporation.

> In the interpretation of all statutes, the courts shall look diligently for the intention of the General Assembly. OCGA § 1-3-1(a). Legislative intent is determined from consideration of the entire statute; thus we consider a statutory provision not in isolation, but in the context of the other statutory provisions of which it is a part.

*Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (755 SE2d 805) (2014). The Attorney General argues that the trial court correctly found that the term "person" in OCGA § 50-14-6 includes the City of Cumming as a municipal corporation because: (1) OCGA § 1-2-1 provides that "[t]here are two classes of persons: natural and artificial [and that ] [c]orporations are artificial persons . . ." and (2) OCGA § 1-3-3 (14) provides that, "[a]s used in this Code or in any other law of this state, the term . . . '[p]erson' includes a corporation." But "[a] corporation is not impliedly within a statutory provision applicable to persons, if it is not within the purpose and intent of such provision, or if an attempt to exclude it otherwise appears." *Georgia R. Bank & Trust Co. v. Liberty Nat. Bank & Trust Co.*, 180 Ga. 4, 12 (177 SE 803) (1934).

When other provisions of the OMA are considered, it is clear that the Legislature did not intend for the term "person" in OCGA § 50-14-6 to include a

14

municipal or any other kind of corporation. The OMA does not define the term "person." Under OCGA § 50-14-1 (a) (1), the OMA defines the term "agency" as follows:

(a) As used in this chapter, the term:

(1) "Agency" means:

(A) Every state department, agency, board, bureau, office, commission, public corporation, and authority;

(B) Every county, municipal corporation, school district, or other political subdivision of this state;

(C) Every department, agency, board, bureau, office, commission, authority, or similar body of each such county, municipal corporation, or other political subdivision of the state;

(D) Every city, county, regional, or other authority established pursuant to the laws of this state; and

(E) Any nonprofit organization to which there is a direct allocation of tax funds made by the governing body of any agency as defined in this paragraph which constitutes more than 33 1/3 percent of the funds from all sources of such organization; provided, however, that this subparagraph shall not include hospitals, nursing homes, dispensers of pharmaceutical products, or any other type organization, person, or firm furnishing medical or health services to a citizen for which they receive reimbursement from the state whether directly or indirectly; nor shall this term include a subagency or affiliate of such a nonprofit organization from or through which the allocation of tax funds is made.

Thus, OCGA § 50-14-1 defines the term "agency" to include municipal and public corporations and numerous other artificial entities (and regulates the meetings of every agency subject to the OMA), but the statute does not include the term "person" in the definition of "agency." To accept the argument that OCGA § 1-3-3 (14) compels the conclusion that the term "person" in OCGA § 50-14-6 includes a municipal or other corporation would construe the OMA to apply the criminal fines and civil penalties in OCGA § 50-14-6 to corporations (as persons), but not to the other non-corporate artificial entities included by OCGA § 50-14-1 (a) (1) in the definition of "agency." Nothing in the OMA supports this interpretation. To the contrary, various sections of the OMA show that the term "person" in OCGA § 50-14-6 refers to a natural person or individual and was not intended to include corporations or any other artificial entity. With respect to criminal enforcement actions, OCGA § 50-14-6 sets forth a defense where "a *person* has acted in good faith in *his or her actions*." (emphasis supplied). This plainly uses the term "person" to refer to a natural person or individual. The OMA elsewhere distinguishes between "persons" and the artificial entities included in the definition of "agency." Subsection (a) of OCGA § 50-14-5 provides with respect to jurisdiction to enforce the OMA that: "In addition to any action that may be brought by any person, firm, corporation, or

16

other entity, the Attorney General shall have authority to bring enforcement actions. . . ." And subsection (c) of OCGA § 50-14-5 specifically distinguishes the term "person" from artificial entities defined in "agency" by providing that: "Any agency or person who provides access to information in good faith reliance on the requirements of this chapter shall not be liable in any action on account of having provided access to such information."

It follows that, if the Legislature had intended for corporations and other artificial entities included in the definition of "agency" to be subject to the fine and penalty provisions of OCGA § 50-14-6, it would have done so by specifically making "any agency" subject to those provisions. Because OCGA § 50-14-6 subjects "any person" to its provisions, and does not specifically subject "any agency" to its provisions, we find that OCGA § 50-14-6 applies only to natural persons. The trial court erred by finding that the City of Cumming is a "person" subject to imposition of civil penalties pursuant to OCGA § 50-14-6. To the extent the trial court assessed civil penalties against the City pursuant to OCGA § 50-14-6, the court's summary judgment order is reversed.

4. On the present record, we agree that a question of fact remains precluding summary judgment on the issue of whether Tisdale was removed from the meeting

17

at the direction of Mayor Gravitt. In granting the Attorney General's motion for summary judgment, the trial court ruled that the defendants negligently violated the OMA provisions requiring that the City Council meeting be open to the public, and that the public be afforded access to the meeting, when "they wrongfully removed [Tisdale] from the meeting. . . ." As set forth above, sworn testimony from Gravitt and City police on this issue conflicted with sworn testimony given by Tisdale. "To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c)." *Lau's Corp. v. Haskins*, 261 Ga, 491, 491 (405 SE2d 474) (1991). Construing the record in favor of the defendants, we conclude that a disputed factual issue remains on whether Tisdale was removed from the meeting at the direction of Mayor Gravitt. Id. The trial court's grant of summary judgment in favor of the Attorney General on this alleged violation, and the use of this violation as a basis for imposition of a civil penalty, is reversed.

5. Mayor Gravitt, individually, contends that the trial court erred by assessing civil penalties against him in excess of those permitted under OCGA § 50-14-6.

Under OCGA § 50-14-6,

[a]ny person knowingly and willfully conducting or participating in a meeting in violation of this chapter shall be guilty of a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000.00. Alternatively, a civil penalty may be imposed by the court in any civil action brought pursuant to this chapter against any person who negligently violates the terms of this chapter in an amount not to exceed $1,000.00 for the first violation. A civil penalty or criminal fine not to exceed $2,500.00 per violation may be imposed for each additional violation that the violator commits within a 12 month period from the date that the first penalty or fine was imposed. . . ."

In its order granting summary judgment in favor of the Attorney General, the trial court ruled that the City and Gravitt negligently violated the OMA "on three separate occasions" at the same City Council meeting on April 17, 2012 – (1) by preventing Tisdale from videotaping the meeting with a camera when the meeting convened; (2) by physically removing Tisdale from the meeting when the meeting convened; and (3) by again preventing Tisdale from videotaping the same meeting with a different camera when she was present during the meeting at a later time. Pursuant to OCGA § 50-14-6, the trial court imposed the following civil penalties in its summary judgment order: (a) against the City – a $1,000.00 penalty for violation (1); a $2,500.00 penalty for violation (2); and a $2,500.00 penalty for violation (3); and (b) against Gravitt, individually – a $1,000.00 penalty for violation (1), a $2,500.00 penalty for violation (2), and a $2,500.00 penalty for violation (3).

19

As we held in Division 3, supra, the City is not a "person" under OCGA § 50-14-6 and is not subject to any civil penalty (or criminal fine) under this code section for violation of the OMA. By contrast, as set forth above, OCGA § 50-14-6 subjects "any person" to alternative criminal or civil punishment for violation of the OMA, as follows: a misdemeanor criminal fine not to exceed $1,000.00 upon conviction of any person for "knowingly and willfully conducting or participating in a meeting in violation of this chapter," or, "[a]lternatively, a civil penalty may be imposed by the court in any civil action brought pursuant to this chapter against any person who negligently violates the terms of this chapter in an amount not to exceed $1,000.00 for the first violation." Furthermore, OCGA § 50-14-6 provides that "[a] civil penalty or criminal fine not to exceed $2,500.00 per violation may be imposed for each additional violation that the violator commits within a 12 month period from the date that the first penalty or fine was imposed."

Gravitt does not claim that the $1,000.00 civil penalty imposed against him for violation (1) exceeded the penalties authorized under OCGA § 50-14-6. He claims that the $2,500.00 penalty imposed for violation (2), and the $2,500.00 penalty imposed for violation (3), exceeded the penalties authorized by OCGA § 50-14-6. We agree. Penalties not to exceed $2,500.00 per violation are authorized under OCGA

20

§ 50-14-6 for each additional violation "commit[ted] within a 12 month period from the date that the first penalty or fine was imposed." This plainly refers to additional violations committed within 12 months after the first penalty or fine imposed for a violation. All of the violations (or alleged violations) in this case were committed at the meeting on April 17, 2012, and the first penalty imposed against Gravitt for a violation was imposed in the trial court's summary judgment order. None of the violations (or alleged violations) for which the trial court imposed a $2,500.00 penalty in the summary judgment order were committed by Gravitt within a 12-month period from the date that the first penalty was imposed. Under the plain language of OCGA § 50-14-6, we conclude that the trial court was not authorized to impose a civil penalty against Gravitt in excess of "$1,000.00 for the first violation" of the OMA at the meeting. Accordingly, as to the civil penalties imposed on summary judgment by the trial court against Gravitt, individually, for violations (1), (2), and (3), we affirm the imposition of a $1,000.00 penalty for violation of the OMA at the meeting, and we reverse the imposition of the additional $5,000.00 in civil penalties.

6. We find no error in the trial court's ruling that the Attorney General was entitled to reasonable attorney fees and litigation costs incurred in bringing the enforcement action.

21

Under OCGA § 50-14-5 (b) of the OMA,

> [i]n any action brought to enforce the provisions of this chapter in which the court determines that an agency acted without substantial justification in not complying with this chapter, the court shall, unless it finds that special circumstances exist, assess in favor of the complaining party reasonable attorney's fees and other litigation costs reasonably incurred. Whether the position of the complaining party was substantially justified shall be determined on the basis of the record as a whole which is made in the proceeding for which fees and other expenses are sought.

As set forth in Division 5, supra, the defendants do not dispute the trial court's ruling on summary judgment that they negligently violated the OMA by preventing Tisdale from videotaping the City Council meeting with a camera when the meeting convened, and by again preventing Tisdale from videotaping the same meeting with a different camera when she was present during the meeting at a later time. The trial court expressly ruled that there was no substantial justification for these violations of the OMA. We apply a "clearly erroneous" standard of review to a trial court's determination that there was no substantial justification for violations of the OMA. *Evans County Bd. of Commrs. v. Claxton Enterprise*, 255 Ga. App. 656, 658 (566 SE2d 399) (2002). We find no clear error and affirm this ruling.

Having found substantial justification for the award of fees and costs, "[t]he court may reduce or eliminate the award completely, however, upon a finding of

22

special circumstances that would, in the exercise of the court's discretion, justify such a decision." Id. at 657. In the present case, the trial court ruled that the Attorney General was entitled to reasonable attorney fees and costs, and that the amount to be awarded was to be determined at a subsequent hearing. Accordingly, on remand to determine remaining issues and the amount to be awarded for trial or appellate litigation, the court shall consider any special circumstances (including any considered in this opinion) which may affect the award. Id. at 658-659.

*Judgment affirmed in part and reversed in part, and case remanded. Miller, J., concurs specially. Branch, J., concurs in Divisions 2, 4, 5 and 6, and in the judgment.*

A15A0348.  GRAVITT et al. v. OLENS.

MILLER, Judge, concurring specially.

Although I concur with the result reached by the majority in this case, I write separately, because I do not agree with all that is said in Division 1. It was not necessary for the majority to apply the right for any reason rule[1] in order to affirm the denial of the City's motion to dismiss, because the trial court properly ruled below that the legislature expressly waived sovereign immunity by enacting the OMA. OCGA § 50-14-5 (a); Ga. Const. of 1983, Art. IX, Sec II, Par. IX (General Assembly may expressly waive sovereign immunity by law).

It is important to note that the plain language of the OMA specifically provides that the Attorney General has the authority under the statute to bring an action to enforce the OMA. This is an important duty and essential purpose conveyed on the Attorney General by the legislature in order to maintain open meetings in the interest of the general public. Since the statute expressly allows the Attorney General to bring this action, I would affirm the denial of the City's motion to dismiss.

---

[1] This Court may affirm the judgment of the lower court, even if it is based on erroneous reason, so long as it is right for any reason. See *Nat. Tax Funding L. P. v. Harpagon Co., LLC*, 277 Ga. 41, 45 (4) (586 SE2d 235) (2003).