296 Ga. 576
FINAL COPY

S14G0619.  CITY OF ATLANTA et al. v. MITCHAM.

THOMPSON, Chief Justice.

We granted a petition for writ of certiorari in this case to determine whether the Court of Appeals used the proper analysis when it determined that the provision of medical care by the City of Atlanta to inmates in its custody was a ministerial function for which the City of Atlanta's sovereign immunity had been waived.  See City of Atlanta v. Mitcham, 325 Ga. App. 481 (751 SE2d 598) (2013).  Because we find that the care of inmates in the custody of a municipal corporation is a governmental function for which sovereign immunity has not been waived, we reverse.

Appellee Barto Mitcham filed a negligence action against appellants, the City of Atlanta (the "City") and George Turner, in his official capacity as the Chief of Police for the City of Atlanta Police Department, alleging that Mitcham was seriously injured as a result of appellants' failure to provide him necessary medical treatment while in their custody.  Mitcham specifically alleged that after he was arrested by the City of Atlanta Police Department, he became ill because

of low blood sugar associated with diabetes. He was taken to the hospital, and upon his discharge and release back into the custody of the City, Atlanta Police Department officers were informed of his diabetic condition and the need to monitor and regulate his insulin levels. He alleged they failed to do so, causing him further illness and serious and permanent injuries.

Appellants answered the complaint and filed a joint motion to dismiss on sovereign immunity grounds. See OCGA § 9-11-12 (b) (6). The trial court denied the motion, finding that Mitcham's claims were not barred by sovereign immunity because the provision of "medical attention and/or care for an inmate is a ministerial act which does not involve the exercise of discretion." Relying primarily on its opinion in Cantrell v. Thurman, 231 Ga. App. 510 (499 SE2d 416) (1998), a case involving claims against a county sheriff and the constitutional waiver of the sovereign immunity of the state and its departments and agencies under Article I, Section II, Paragraph IX (d) of the Georgia Constitution, the Court of Appeals affirmed, holding that "the provision of medical care to inmates in the City's and Turner's custody was a ministerial act and, because it was a ministerial act, sovereign immunity was waived pursuant

to OCGA § 36-33-1 (b)." [1]  We granted certiorari.

1.  A motion to dismiss for failure to state a claim should not be granted unless the allegations of the complaint demonstrate to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support thereof.  Anderson v. Flake, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997).  Appellants moved to dismiss Mitcham's claims on the ground of sovereign immunity.  Under Georgia law, municipal corporations are protected by sovereign immunity pursuant not to Article I of the Constitution but rather Article IX, Section II, Paragraph IX, unless that immunity is waived by the General Assembly.  See Godfrey v. Ga. Interlocal Risk Mgmt. Agency, 290 Ga. 211, 214 (719 SE2d 412) (2011) (absent legislative scheme providing for specific waiver, there is no waiver of municipal sovereign immunity).  See also

---

[1]  Article I, Section II, Paragraph IX (d) provides:

Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions.  Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. . . .

City of Thomaston v. Bridges, 264 Ga. 4 (439 SE2d 906) (1994). With particular regard to municipal corporations, our General Assembly has enacted OCGA § 36-33-1 which reiterates that "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability from damages." OCGA § 36-33-1 (a). The same statute, however, also provides for a narrow waiver of a municipal corporation's sovereign immunity, expressly providing in subsection (b) that "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or for improper or unskillful performance of their ministerial duties, they shall be liable." [2] OCGA § 36-33-1 (b). This provision has for more than a century been interpreted to mean that municipal corporations are immune from liability for acts taken in performance

---

[2] A further waiver of a municipal corporation's sovereign immunity is found in subsection (a) which provides that a "municipal corporation shall not waive its immunity by the purchase of liability insurance, except as provided in Code Section 33-24-51 or 36-92-2 or unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy." See also Ga. Dept. of Natural Resources v. Center for a Sustainable Coast, 294 Ga. 593, 600 (755 SE2d 184) (2014) (municipality may be liable for creating or maintaining a nuisance which constitutes either a danger to life and health or a taking of property); OCGA § 32-4-93 (liability of municipalities for defects in public roads).

4

of a governmental function but may be liable for the negligent performance of their ministerial duties. See Koehler v. Massell, 229 Ga. 359, 361-362 (3) (191 SE2d 830) (1972); Mayor and Aldermen of Savannah v. Jones, 149 Ga. 139, 141-142 (99 SE 294) (1919); Wright v. City Council of Augusta, 78 Ga. 241, 243-244 (1886). The propriety of the trial court's ruling on appellants' motion to dismiss thus turns on whether appellants' failure to provide medical treatment to an inmate in the City's custody involved a governmental function.

2. Governmental functions traditionally have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality. See Cornelisen v. City of Atlanta, 146 Ga. 416, 419 (91 SE 415) (1917). The exemption from liability for governmental functions "is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature, is one in which the corporation has no particular interest and from which it derives no special benefit in its corporate capacity." Wright, supra, 78 Ga. at 243, quoting Dillon (2 Municipal Corp. § 976, 3rd ed.). Ministerial functions, in comparison, are recognized as those involving the "exercise of some private franchise, or some franchise conferred upon [the municipal corporation] by law which it may

5

exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest."[3] Love v. City of Atlanta, 95 Ga. 129, 131 (22 SE 29) (1894).

The exemption from liability for governmental functions set out in OCGA § 36-33-1 (b) thus left in place "the common-law doctrine, frequently applied in this State before and since the adoption of the code, of non-liability for

---

[3] Appellants argue that the term "ministerial" means proprietary, and therefore, only those functions performed by a municipal government which generate profit for the corporation can be classified as ministerial. This narrow interpretation may originate from an improper truncation of the above quoted language so as to limit ministerial functions to those functions "exercise[d] for the private profit" and from the emphasis placed upon the proprietary nature of a function in some cases. See, e.g., City of Atlanta v. Chambers, 205 Ga. App. 834, 835-836 (424 SE2d 19) (1992) (focusing on whether character of municipal function is primarily a source of revenue or is being used primarily for the benefit of the public regardless of incidental generation of revenues); City of Gainesville v. Pritchett, 129 Ga. App. 475, 476 (199 SE2d 889) (1973) (equating ministerial with proprietary). While we acknowledge that our courts on occasion have considered the fact that a function generates revenue for the municipal corporation important in determining whether it constitutes a governmental or ministerial function, the definitions attributed to these terms by this Court make clear that although profit or revenue generation may, in certain circumstances, be evidence of the private nature of a function, it is by no means the only factor to be considered. See Cornelisen, supra, 146 Ga. at 419 (public character of duties not affected by purely incidental profit from city's operation of park); Gooden v. City of Atlanta, 242 Ga. App. 786, 788 (531 SE2d 364) (2000) (finding operation of public swimming pool primarily for public benefit and not for revenue production was a governmental function); Koehler v. City of Atlanta, 221 Ga. App. 534, 535 (472 SE2d 91) (1996) (operation of museum, Cyclorama, for public benefit is a governmental function); Banks v. City of Albany, 83 Ga. App. 640, 643-644 (64 SE2d 93) (1951) (operation of fire department a governmental function even where fire protection extended to property beyond corporate limits only upon payment of fee); Mayor and Aldermen of Savannah v. Lyons, 54 Ga. App. 661, 665 (189 SE 63) (1936) (operation and maintenance of airport was a government function notwithstanding fees and revenue received from lessees).

conduct of officers, agents and servants of municipal corporations in respect to duties devolving upon them in virtue of the sovereign or governmental functions of the municipality." Brannan v. City of Brunswick, 49 Ga. App. 62 (147 SE 186) (1934). It reflects a municipal corporation's dual functions, performing in the exercise of its corporate functions two classes of service, governmental duties and private corporate, or ministerial, duties. Jones, supra, 149 Ga. at 141. See Purser v. Dodge County, 188 Ga. 250, 251 (3 SE2d 574) (1939) (recognizing that municipal corporations act in dual capacities, "exercising powers pertaining not only to their delegated sovereignty, but powers of ministerial or proprietary in character."). As this Court has recognized with approval:

> A municipal corporation has a dual character, the one public and the other private, and exercises correspondingly two-fold functions, the one governmental and legislative, and the other private and ministerial. In its public character, it acts as an agency of the State to enable it the better to govern that portion of its people residing within the municipality, and to this end there is granted to or imposed upon it, by the charter of its creation, powers and duties to be exercised and performed exclusively for public governmental purposes. These powers are legislative and discretionary, and the municipality is exempt from liability for an injury resulting from the failure to exercise them or from their improper or negligent exercise. In its corporate and private character there are granted unto it privileges and powers to be

7

exercised for its own private advantage, which are for public purposes in no other sense than that the public derives a common benefit from the proper discharge of the duties imposed or assumed in consideration of the privileges and powers conferred. This latter class of powers and duties are not discretionary, but ministerial and absolute; and, for an injury resulting from negligence in their exercise or performance, the municipality is liable in a civil action for damages, in the same manner as an individual or private corporation.

Mayor and Council of Dalton v. Wilson, 118 Ga. 100, 102 (44 SE 830) (1903), quoting Jones v. Williamsburg, 97 Va. 722, 723-724 (34 SE 883) (Va. 1900).

This Court on occasion has acknowledged the difficulty in determining to which of the two classes a function belongs, the proper classification depending in each case on an interpretation of the powers and duties delegated to the corporation and the character of the function being performed. See Mayor and Council of Dalton, supra, 118 Ga. at 102-103; Love, supra, 95 Ga. at 131. Our courts, however, have had no difficulty concluding that the operation of a jail and the care and treatment of individuals in police custody are purely governmental functions related to the governmental duty to ensure public safety and maintain order for the benefit of all citizens. See Hurley v. City of Atlanta, 208 Ga. 457, 457-459 (67 SE2d 571) (1951) (dismissing writ of certiorari as improvidently granted while approving Court of Appeals' ruling that "keep and

8

maintenance of the convict . . . was a governmental function, for the negligent performance of which the city was not liable to him in damages"); Gray v. Mayor and City of Griffin, 111 Ga. 361, 363 (36 SE 792) (1900) (when city "maintains a prison wherein to confine offenders . . . for safe-keeping until they can be tried, it is exercising" a governmental power); Nisbet v. City of Atlanta, 97 Ga. 650 (25 SE 173) (1895) (municipality not liable for death of convict while doing work in police custody and caused by city foreman's failure to provide medical treatment because at the time the municipal corporation was "exercising governmental powers and discharging governmental duties"); Thomas v. Williams, 105 Ga. App. 321, 325 (2), (3) (124 SE2d 409) (1962) (municipality not liable for negligent acts of city officer in care of prisoner in city custody). See also OCGA § 36-33-3 ("A municipal corporation shall not be liable for torts of policemen or other officers engaged in the discharge of the duties imposed on them by law."). It has been uniformly held, therefore, that there can be no action for damages against a municipal corporation for its failure to provide medical care to an inmate regardless of the presence of negligence.[4]

---

[4] That is not to say that all such plaintiffs are without recourse. Allegations that a government denied or provided inadequate medical treatment to one whom it is punishing by incarceration in some circumstances have been held to state a cause of action under 42

9

We find this precedent binding and reaffirm that when a municipal corporation, through the exercise of its governmental power, provides or fails to provide medical treatment to an inmate in its custody it is performing a governmental function for which its sovereign immunity has not been waived by the enactment of OCGA § 36-33-1 (b). That a municipal corporation performs this function under the mandate of OCGA § 42-5-2 (a),[5] a statute requiring municipal corporations and other governmental entities to provide medical treatment to inmates in their custody, is further evidence that it is a function governmental in nature; that is, one performed in obedience to an act of the legislature, for the benefit of the general public, and for which the municipal corporation derives no special benefit.[6]

---

USCA § 1983. See Estelle v. Gamble, 429 U. S. 97, 103-104 (97 SCt 285, 50 LE2d 251) (1976); Hughes v. Noble, 295 F2d 495 (5th Cir. 1961); Davis v. City of Roswell, 250 Ga. 8 (295 SE2d 317) (1982).

[5] OCGA § 42-5-2 (a) states that "it shall be the responsibility of the governmental unit, subdivision, or agency having the physical custody of an inmate to maintain the inmate, furnishing him . . . any needed medical and hospital attention . . . ."

[6] Although Mitcham argues that the allegations in his complaint deal only with the actual decision not to provide him with medical care and our focus in determining the nature of the function, and thus the extent of any waiver, should be limited to consideration of that narrowly defined act, the sovereign immunity of a municipal corporation cannot be parsed in this manner. The language of OCGA § 36-33-1 (b) and our cases make clear that in determining whether the sovereign immunity of a municipal corporation has been waived, the relevant inquiry focuses not on the specific act alleged to have caused harm but on the

10

The Court of Appeals acknowledged the constitutional and statutory duty of state and local governments to provide medical treatment to inmates in their custody but found the mandatory nature of this duty, i.e., the absence of any discretion in whether the duty should be performed, supported its conclusion that the provision of medical treatment to inmates by a municipal corporation is a "ministerial act."[7] See City of Atlanta v. Mitcham, supra, 325 Ga. App. at 484. This analysis and its reference to a municipal corporation's "ministerial acts" rather than its "ministerial functions" reflects a confusion regarding the separate doctrines of sovereign and official immunity and the substantive differences between the ministerial functions performed by a government body and the ministerial acts of an individual.

As stated, a municipal corporation is immune from liability for acts taken in the performance of its governmental functions but it may be held liable for the negligent performance of its ministerial functions. The determination of

---

nature of the function being performed by or on behalf of the municipal corporation.

[7] Although not necessary for resolution of this appeal, we note our rejection in Murphy, supra, 282 Ga. at 199-200, of the notion that for purposes of official immunity "a statutorily-mandated action is the equivalent of a ministerial act that deprives the actor of official immunity if done negligently" and our discussion of the differences between the statutorily-mandated action in that case and a "ministerial act."

whether a function is governmental or ministerial in character for purposes of municipal sovereign immunity focuses broadly on the nature, purpose, and intended beneficiaries of the function performed by the municipal corporation. See Jones, supra, 149 Ga. at 141-142; Love, supra, 95 Ga. at 131. In comparison, the term "ministerial act," as it applies to the waiver of an individual's official immunity under Article I, Section II, Paragraph IX (d) of the Georgia Constitution, is defined by the character of the specific action taken by the government official or employee and the amount of discretion and judgment applied in executing a specific duty. See McDowell v. Smith, 285 Ga. 592, 593 (678 SE2d 922) (2009); Heller v. City of Atlanta, 290 Ga. App. 345, 347-348 (659 SE2d 617) (2008). See also Murphy v. Bajjani, 282 Ga. 197, 199 (647 SE2d 54) (2007). While both terms share the ministerial modifier, whether an act performed by a municipal employee is ministerial or discretionary is not a consideration in the analysis of whether a municipality's sovereign immunity has been waived. This is because municipal sovereign immunity applies equally to, i.e., bars claims arising from, both ministerial and discretionary acts. See Sinkfield v. Pike, 201 Ga. App. 652, 653 (3) (411 SE2d 889) (1991) ("[c]ity is immune from any liability for [the employee's] actions regardless of whether his

12

actions were discretionary or ministerial and even if he [is] negligent");
Christensen v. Floyd County, 158 Ga. App. 274 (279 SE2d 723) (1981)
(decision whether to erect or maintain traffic control sign is exercise of a
governmental function by a municipality, and municipality not liable for even
negligent performance of this function).  See also Seay v. Cleveland, 270 Ga.
64, 65 (508 SE2d 159) (1998) (county's sovereign immunity applies equally to
ministerial and discretionary acts).  Accordingly, the definition and evaluation
of an act  performed by an individual for purposes of *official* immunity is not
interchangeable with and should not be substituted for the definition used to
identify the nature of the functions of a municipal government for purposes of
*sovereign* immunity.  As noted by Judge Branch in her special concurrence in
this case, it is important for both courts and litigants not to confuse the term
"ministerial duties" as it pertains to the question of official immunity with the
term "ministerial functions" as it is used in determining the waiver of sovereign
immunity under OCGA § 36-33-1 (b).  In doing so, the Court of Appeals erred.

The analysis of the Court of Appeals is further flawed in its application of
Cantrell v. Thurman, supra, to this case.  Cantrell involved the constitutional
waiver of a county's sovereign immunity under Article I, Section II, Paragraph

13

IX (d) of the Georgia Constitution, a waiver not applicable to municipal corporations and one for which it is wholly irrelevant whether the action was taken in the performance of a governmental function.[8] In relying so heavily upon the holding of Cantrell, a holding this Court has never endorsed, the Court of Appeals ignored the plain language of OCGA § 36-33-1 (b) and the clear distinction between the constitutional waiver of an official's immunity under Article I, Section II, Paragraph IX (d) and the waiver of municipal sovereign immunity found in § 36-33-1 (b).[9]

3. Because there has been no waiver of the City's sovereign immunity in this case, Mitcham is precluded from pursuing his negligence claims against

---

[8] In addressing whether a county sheriff and his deputies were protected by sovereign immunity from claims alleging a failure to provide medical attention to an inmate, the Cantrell court held that

> [p]roviding adequate medical attention for inmates under [the county defendants'] custody and control is a ministerial act . . . and does not involve the exercise of discretion to provide medical care, because medical care is a fundamental right and is not discretionary in requiring medical care; thus, such act is *not* subject to either sovereign immunity or official immunity.

Cantrell, supra, 231 Ga. App. at 514.

[9] We express no opinion in this case regarding the application of Article I sovereign or official immunity to the facts of this case or the correctness of the Court of Appeals' holding in Cantrell.

both the City and Turner in his official capacity. See Cameron v. Lang, 274 Ga. 122, 126-127 (3) (549 SE2d 341) (2001); Campbell v. Goode, 304 Ga. App. 47, 50 (695 SE2d 44) (2010) (claim against city police officer in his official capacity is, in reality, a suit against the city and subject to a claim of sovereign immunity). Accordingly, the decision of the Court of Appeals affirming the trial court's denial of appellants' motion to dismiss is reversed.

Judgment reversed. All the Justices concur.

Decided February 16, 2015.

Certiorari to the Court of Appeals of Georgia – 325 Ga. App. 481.

Cathy Hampton, Laura S. Burton, for appellants.

Charles H. McAleer, for appellee.

Dubberly & McGovern, Joseph D. McGovern, Brown, Readdick, Bumgartner, Carter, Strickland & Watkins, Richard K. Strickland, Paul M. Scott, amici curiae.