**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 21, 2019**

# In the Court of Appeals of Georgia

A19A1408. GATTO et al. v. CITY OF STATESBORO et al.

A19A1409. ATLANTIC SPECIALTY INSURANCE COMPANY
v. GATTO et al.

BROWN, Judge.

Michael and Katherine Gatto, as personal representatives of the estate of their son, Michael Joseph Gatto ("Michael"), and Michael Gatto, as administrator of the estate of his son, sued the City of Statesboro ("the City") and Sue Starling, the Clerk of the City of Statesboro, in her individual capacity (collectively "the defendants"), for their son's personal injuries and his wrongful death following an altercation with a bouncer at one of the four bars located in the University Plaza establishment in the City. The City's insurer, Atlantic Specialty Insurance Company, sought to intervene in the action. The trial court granted summary judgment to the City and Starling on grounds of proximate cause and sovereign immunity, and denied Atlantic's motion

to intervene. In Case No. A19A1408, the Gattos appeal the former ruling. In Case No. A19A1409, Atlantic appeals the latter ruling. We have consolidated the appeals for review. For the reasons that follow, in Case No. A19A1408, we affirm the grant of summary judgment to the City, but reverse the grant of summary judgment to Starling; and in Case No. A19A1409, we dismiss as moot the trial court's denial of the motion to intervene as to the City, but vacate the trial court's denial of the motion to intervene as to Starling, and remand the case with direction.

As the nonmovant on summary judgment, we construe the facts in favor of the Gattos. *City of Savannah v. Herrera*, 343 Ga. App. 424, 425, n.4 (808 SE2d 416) (2017). "However, [the Gattos] bear the burden to establish a waiver of sovereign immunity." Id. Our review is de novo. See *Calloway v. City of Warner Robins*, 336 Ga. App. 714 (783 SE2d 175) (2016). So construed, the record reflects that on the evening of August 27, 2014, and early morning hours of August 28, 2014, eighteen-year-old Michael, an incoming freshman at Georgia Southern University, was at Rude Rudy's, a bar located in University Plaza, drinking with friends.[1] In addition to Rude

---

[1] Just one month before, Michael had been arrested in Athens-Clarke County for theft of services and underage possession/consumption of alcohol. On August 5, 2014, Michael entered into a pretrial intervention program agreement, forbidding him from consuming or possessing any alcoholic beverages for one year, or patronizing any establishment whose primary purpose was to serve alcohol.

Rudy's, University Plaza was home to several other businesses that served alcohol, including Retrievers, Rusty's Tavern, and Rum Runners, and was within walking distance of the campus of Georgia Southern University.[2] Told by a bartender that Michael was stealing money from the tip jar, Grant James Spencer ("Spencer"), a bouncer at Rude Rudy's, went to remove Michael from the bar. Spencer struck Michael five times in the head/face, until he was limp and unconscious, and then dropped him on the floor of the bar. After Spencer heard Michael's head hit the floor of the bar, he dragged him outside and left him. Michael was discovered by emergency personnel and airlifted to a hospital in Savannah, where he died on the afternoon of August 28, 2014. Spencer pled guilty to voluntary manslaughter, and was sentenced to 20 years in prison.

The Gattos sued the City and Starling for negligence and maintenance of a nuisance, essentially alleging that their son was beaten to death because the

[2] There is considerable evidence in the record that all of these establishments admitted underage patrons and served alcohol to them; most of the establishments, including Rude Rudy's, did not serve food. According to one underage patron, Rude Rudy's was "the only place that [he] could get alcohol. That [was] why [he] was there[;] that is why everyone was there. . . ." There is also evidence that some of the bartenders and others serving alcohol at Rude Rudy's were underage, and that bouncers who had been charged with DUI worked at the bar. There was also evidence that fights occurred often in the University Plaza, and that emergency vehicles and police officers — uniformed and undercover — were frequently present in the plaza.

defendants disregarded the numerous alcohol violations and other illegal activity occurring at the University Plaza establishments, including Rude Rudy's. In their view, if the defendants had complied with and enforced the City's ordinances related to these violations, Rude Rudy's would not have held an alcohol license in August 2014, and Michael would not have been beaten. In their third amended complaint, the Gattos specifically alleged that: (1) Starling was negligent and breached her ministerial duty to set due process hearings before the Mayor of Statesboro and the City Council upon her receipt of notices of violations against the University Plaza establishments;[3] (2) the City is liable for the negligence of its employee Starling arising out of this breach; (3) the City breached a duty of ordinary care by renewing or allowing the renewal of the business and alcohol licenses of the University Plaza establishments despite its knowledge of the numerous illegal and dangerous activities occurring there; and (4) the defendants' acts and omissions over the course of several years in allowing the University Plaza establishments to remain in operation despite knowledge of the repeated criminal activity, constituted a continuing nuisance that "was injurious to the invitees to the premises, the citizens of the City . . . , and the

---

[3] In their original complaint, the Gattos sued Starling in her individual and official capacity. Two months later they dismissed without prejudice the official capacity claim against her.

4

general public." The Gattos also asserted a claim for damages pursuant to OCGA §
13-6-11. The defendants moved for summary judgment on all claims, asserting, inter
alia, that the City is entitled to sovereign immunity, that Starling is entitled to
qualified or official immunity, and that no act or omission of the defendants was the
proximate cause of Michael's death. The trial court granted the motion on the ground
that (1) intervening criminal acts — Spencer's criminal act and Michael's violation
of the law (underage possession and consumption of alcohol and failure to comply
with his pretrial agreement) — broke the causal chain between the defendants' breach
of any duties and Michael's injuries and death, and (2) the claims against the City are
barred by the doctrine of sovereign immunity. In its ruling, the trial court rejected the
Gattos' argument that the defendants waived sovereign immunity by the City's
purchase of an insurance policy. As to Starling, the trial court ruled that the Gattos'
suit was in reality a claim against Starling in her official capacity and that she was
entitled to summary judgment on the ground of sovereign immunity. The trial court
denied the motion to intervene, ruling that Atlantic's interest was "adequately
represented by existing parties."

In Case No. A19A1408, the Gattos contend that the trial court erred in granting
the defendants' motion for summary judgment. First, the Gattos argue that because

the City purchased liability insurance covering the Gattos' claims, the General Assembly has waived the City's sovereign immunity. Second, the Gattos assert that even if the General Assembly had not waived the City's sovereign immunity, it would not apply to the Gattos' nuisance claim. Third, the Gattos contend that the public duty doctrine does not apply to their negligence claim which involves "active negligence" and does not depend on "'police protection.'" Fourth, the Gattos argue that the City's maintenance of a nuisance at Rude Rudy's and University Plaza proximately caused Michael's death. Lastly, the Gattos assert that because Starling breached her ministerial duty to schedule due process hearings, she is liable in her individual capacity. As part of this last assertion, the Gattos contend that the trial court erred in granting summary judgment to Starling on the ground of sovereign immunity because the Gattos previously dismissed their official capacity claim against her and the defendants never moved for summary judgment on the ground that sovereign immunity applied to Starling.

In Case No. A19A1409, Atlantic contends that it moved to intervene in this lawsuit to respond to the Gattos' arguments concerning insurance coverage and judicial estoppel and to preserve its rights if the trial court denied the defendants' motion for summary judgment. A ruling by this Court affirming the grant of summary

6

judgment would address Atlantic's concerns. Thus, Atlantic contends that the only reason to consider its appeal is if this Court reverses the order granting summary judgment.

*Case No. A19A1408*

1. We first address the Gattos' contention that sovereign immunity does not apply to their nuisance claim. "Sovereign immunity . . . raises the issue of the trial court's subject matter jurisdiction to try the case." (Citation and punctuation omitted.) *City of Albany v. Stanford*, 347 Ga. App. 95, 97 (1) (815 SE2d 322) (2018) (physical precedent only). As such, it "is a threshold issue that the trial court [is] required to address before reaching the merits of any other argument." *Albertson v. City of Jesup*, 312 Ga. App. 246, 248 (1) (718 SE2d 4) (2011). Under the Georgia Constitution, municipalities are protected by sovereign immunity unless waived by the General Assembly. Ga. Const. of 1983, Art. IX, Sec. II, Par. IX. See *CSX Transp. v. City of Garden City*, 277 Ga. 248, 250 (1) (588 SE2d 688) (2003) ("any waiver of sovereign immunity is a mere privilege, not a right, and the extension of that privilege is solely a matter of legislative grace") (citation omitted). This principle is reiterated in OCGA § 36-33-1, which pertinently provides that "it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations

7

of the state and such municipal corporations shall be immune from liability for damages." OCGA § 36-33-1 (a). The statute, however, carves out two narrow exceptions as follows: subsection (a) provides that "[a] municipal corporation shall not waive its immunity by the purchase of liability insurance . . . unless the policy of insurance *covers an occurrence for which the defense of sovereign immunity is available*, and then only to the extent of the limits of such insurance policy." (Emphasis supplied.) OCGA § 36-33-1 (a). See also *CSX Transp.*, 277 Ga. at 251 (2) ("the legislature has provided that municipal sovereign immunity may be waived . . . by the purchase of liability insurance"). And, subsection (b) provides that "[m]unicipal corporations shall not be liable for failure to perform or for errors in performing their legislative or judicial powers. For neglect to perform or improper or unskillful performance of their ministerial duties, they shall be liable."

The waiver enunciated in subsection (b) has been consistently "interpreted to mean that municipal corporations are immune from liability for acts taken in performance of a governmental function but may be liable for the negligent performance of their ministerial duties." (Citations omitted.) *City of Atlanta v. Mitcham*, 296 Ga. 576, 577-578 (1) (769 SE2d 320) (2015). The difference between these two functions has been explained as follows:

> Governmental functions traditionally have been defined as those of a purely public nature, intended for the benefit of the public at large, without pretense of private gain to the municipality. The exemption from liability for governmental functions is placed upon the ground that the service is performed by the corporation in obedience to an act of the legislature, is one in which the corporation has no particular interest and from which it derives no special benefit in its corporate capacity. Ministerial functions, in comparison, are recognized as those involving the exercise of some private franchise, or some franchise conferred upon the municipal corporation by law which it may exercise for the private profit or convenience of the corporation or for the convenience of its citizens alone, in which the general public has no interest.

(Citations, punctuation, and footnote omitted.) Id. at 578 (2). The Gattos contend that under common law dating back over 100 years, a municipality may be liable for damages it causes to a third party from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or ministerial function. We disagree.

As this Court explained in *Stanford*, the Supreme Court of Georgia, in a 1993 case, referred to a "nuisance exception" to sovereign immunity, declaring that

> a municipality may be liable for damages caused from the operation or maintenance of a nuisance, irrespective of whether it is exercising a governmental or a ministerial function, because a municipal corporation

9

can not, under the guise of performing a governmental function, create a nuisance dangerous to life and health or take or damage private property for public purpose without just and adequate compensation being first paid.

(Punctuation omitted.) 347 Ga. App. at 97 (1), citing *City of Thomasville v. Shank*, 263 Ga. 624 (437 SE2d 306) (1993). Over twenty years later, the Supreme Court of Georgia clarified the language in *Shank* in the case of *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593 (755 SE2d 184) (2014), explaining that it is

rooted in the concept that the government may not take or damage private property for public purposes without just and adequate compensation. Thus, the "nuisance exception" recognized in *Shank* was not an exception at all, but instead, a proper recognition that the Constitution itself requires just compensation for takings and cannot, therefore, be understood to afford immunity in such cases.

(Citations omitted.) Id. at 600 (2). See *Stanford*, 347 Ga. App. at 97 (1). See also *City of Atlanta v. Demita*, 329 Ga. App. 33, 34 (1) (762 SE2d 436) (2014).

In facts very similar to those at issue here, this Court in a two-to-one decision ruled in *Stanford* that the "nuisance exception" did not apply because the damage at issue was injury to person or loss of life. 347 Ga. App. at 99 (1). Thus, the City of

10

Albany did not waive its sovereign immunity on this ground. Given this ruling and our Supreme Court's holding in *Sustainable Coast*, we conclude that sovereign immunity applies to the Gattos' nuisance claim.

2. We next address the Gattos' contention that the City waived sovereign immunity by its purchase of liability insurance. As laid out in Division 1, supra, a municipality has sovereign immunity when it performs a governmental function *except as waived* by the purchase of liability insurance. Here, we conclude — and the Gattos do not dispute — that the actions are a governmental function. Accordingly, we must determine whether the City waived sovereign immunity by its purchase of liability insurance.

The liability insurance policy purchased by the City contained an endorsement which provides:

> [w]e have no duty to pay damages on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you. This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments.

11

This language expressly provides that it will not cover occurrences when sovereign immunity applies. As set out above, the actions challenged in this lawsuit involve a governmental function to which sovereign immunity applies. It thus follows that because the insurance policy does not cover the Gattos' claims here, there is no legislative waiver of sovereign immunity.

The Gattos argue that the language of the policy effectively usurps the General Assembly's legislative waiver, and allows the City to contract around the waiver. But, the General Assembly has expressly provided for waiver where the policy of insurance "covers an occurrence for which the defense of sovereign immunity is available." See OCGA § 36-33-1 (a). See also *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("[w]hen we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant") (citation omitted). And, in cases such as *Owens v. City of Greenville*, 290 Ga. 557 (722 SE2d 755) (2012), the Supreme Court of Georgia has specifically analyzed insurance policies to determine whether they actually provide coverage for a plaintiff's claims for damages. See id. at 559 (3) (a).

The Gattos also contend that judicial estoppel bars the defendants from asserting that the insurance policy does not cover the Gattos' claims. Specifically, in

12

response to a declaratory judgment action filed by Atlantic in federal district court, the defendants stated in their pleadings that "the claims in the Gatto Plaintiffs' Complaint are covered claims and are not excluded from the Policy's coverage." In their counterclaim filed in that action, the defendants also asked the district court to declare that "[t]he claims of the Underlying Lawsuit are within the coverage of the [insurance] Policy."

Judicial estoppel is an equitable doctrine that prevents a party from asserting a claim or position in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. See *New Hampshire v. Maine*, 532 U. S. 742, 749 (II) (121 SCt 1808, 149 LE2d 968) (2001). See also *Benton v. Benton*, 280 Ga. 468, 469 (629 SE2d 204) (2006). "[I]ts purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." (Citations omitted.) *New Hampshire*, 532 U. S. at 749-750 (II). The "doctrine is invoked by a court at its discretion, and [is] intended to prevent abuse of the judicial process. The circumstances under which it is appropriate are not reduced to any general formula or rule." *Benton*, 280 Ga. at 469. In *New Hampshire*, the Supreme Court set out several factors to consider when deciding

13

whether to apply the doctrine in a particular case, and our Supreme Court summarized them as follows:

> (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to accept the party's earlier position; here the [United States] Supreme Court noted that absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

(Citation and punctuation omitted.) *IBF Participating Income Fund v. Dillard-Winecoff*, 275 Ga. 765, 766 (573 SE2d 58) (2002). We have applied the doctrine even where the underlying case does not involve a federal bankruptcy proceeding. See, e.g., *Georgia Neurology & Rehabilitation v. Hiller*, 310 Ga. App. 202, 207 (2) (a) (712 SE2d 611) (2011); *Falanga v. Kirschner & Venker*, 286 Ga. App. 92, 97 (1) (c) (648 SE2d 690) (2007).

In *IBF*, the Supreme Court of Georgia affirmed this Court's holding that judicial estoppel did not apply when the earlier bankruptcy proceeding in which the party took an allegedly inconsistent position concluded in dismissal of the petition.

14

Id. But see *Roberts v. State*, 278 Ga. 610 (604 SE2d 781) (2004) (judicial estoppel does not apply in criminal cases). In this case, Atlantic's declaratory judgment action in federal district court was dismissed without prejudice, and the Gattos consented to that dismissal. Under these circumstances, it cannot be said that the defendants succeeded in persuading a court to accept their allegedly inconsistent position. See *IBF*, 275 Ga. at 766. Accordingly, we affirm the grant of summary judgment to the City based on sovereign immunity.

3. Because we have found that sovereign immunity applies to the City, we need not consider the Gattos' remaining arguments, namely that the trial court erred in ruling that (1) the City's alleged maintenance of a nuisance at Rude Rudy's and University Plaza did not proximately cause Michael's injuries and death and (2) that summary judgment is also supported by the public duty doctrine. See *Calloway*, 336 Ga. App. at 717 (2); *Ratliff v. McDonald*, 326 Ga. App. 306, 311 (1) (756 SE2d 569) (2014).

4. Next, we address the trial court's grant of summary judgment in favor of Starling. With regard to summary judgment on the Gattos' claim against Starling, the parties only disputed whether Starling was *individually* liable for her own negligence in not scheduling due process hearings and continuing to renew alcohol licenses,

15

contesting whether these tasks were ministerial or discretionary such that official immunity applied. In their motion for summary judgment, the defendants alleged, inter alia, that summary judgment on the Gattos' negligence claim was proper because "Sue Starling is entitled to qualified or official immunity from such claims in her individual capacity[.]"[4] Specifically noting that the Gattos already dismissed the "official capacity" claims against Starling, leaving only the claims asserted against her as an individual, the defendants argued that Starling was entitled to official immunity because the scheduling of due process hearings for alleged violations of the City's alcohol ordinance by the University Plaza establishments was a discretionary act. Counsel for the defendants reinforced this position during the summary judgment hearing, stating: "First, let me be clear that the issue of sovereign immunity *only pertains to the City*, it's not Ms. Starling's defense." (Emphasis supplied.) Counsel

_____

[4] "The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for [her] negligent ministerial acts, [she] may not be held liable for [her] discretionary acts unless such acts are wilful, wanton, or outside the scope of [her] authority." (Citations omitted.) *Owens v. City of Greenville*, 290 Ga. 557, 560 (3) (b) (722 SE2d 755) (2012). See also *Tattnall County v. Armstrong*, 333 Ga. App. 46, 52 (775 SE2d 573) (2015) (Barnes, P. J., concurring fully and specially) (noting that the nomenclature used in this area of the law is extremely confusing and suggesting that we replace "official immunity" with "qualified immunity" when analyzing whether a person sued in his or her individual capacity is immune from suit), overruled on other grounds, *Rivera v. Washington*, 298 Ga. 770 (784 SE2d 775) (2016).

16

concluded his argument as follows: "So our position is that Ms. Starling is entitled to official immunity for all claims asserted against her because the process was discretionary, but even if you believe it was ministerial no breach can be tied causally to the death of [Michael]."

As we interpret the portion of the order granting summary judgment to Starling, the trial court found that even though the Gattos claimed they were suing Starling in her individual capacity, in reality, Starling was being sued in her official capacity. The trial court concluded that "[s]uits against public employees in their official capacities are in reality suits against the state, and therefore, involve sovereign immunity[;] therefore[, the Gattos] are precluded from pursuing their negligence claims against [Starling] in her official capacity." The trial court ruled that Starling was entitled to sovereign immunity; the trial court never addressed whether she was entitled to qualified immunity as asserted by the defendants. On appeal, the Gattos contend that because they withdrew any claims against Starling in her official capacity two years before the summary judgment ruling, the trial court committed plain error by applying sovereign immunity to the individual-capacity claims against Starling. Having considered the arguments made below and on appeal, and the trial

17

court's order, we conclude that the trial court erred in sua sponte granting summary judgment to Starling on the ground of sovereign immunity.

A trial court, with some limitations, may sua sponte grant summary judgment. See *Pruette v. Phoebe Putney Mem. Hosp.*, 295 Ga. App. 335, 342 (2) (671 SE2d 844) (2008).

> In addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment. Thus, we have reversed summary judgment where the parties did not argue the merits of a claim either in briefs or at a hearing.

(Citation omitted.) Id. at 342-343 (2). In this case, the defendants never moved for summary judgment in favor of Starling on the ground of sovereign immunity. The ground was never raised in their briefs or at the summary judgment hearing. On the contrary, the defendants have steadily maintained that Starling is immune from suit on the ground of official or qualified immunity because she was sued in her individual capacity; and, they continue to assert that argument in their brief before this Court. Moreover, the trial court neither referenced the legal issue in the hearing nor asked the parties to brief the issue after the hearing. "It follows that [the Gattos

18

were] not given adequate notice and an opportunity to be heard on the issue of whether [sovereign immunity applied to the Gattos' claim against Starling]." Id. at 343 (2). Because the trial court erred in sua sponte granting summary judgment on this ground, we reverse.[5] See id. See also *Brito v. Gomez Law Group*, 289 Ga. App. 625, 630 (3) (a) (658 SE2d 178) (2008).

The defendants nevertheless argue that we should affirm, asserting that "any error in the trial court's analysis of the claims against Starling is harmless, because the undisputed evidence shows that she is entitled to [qualified] immunity insofar as any of her alleged actions or omissions were discretionary, rather than ministerial." Under the circumstances here, we decline to exercise our discretion and reach the merits as urged by the defendants, and instead elect to return the case to the trial court for its proper consideration of summary judgment as to Starling. See *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002). In an effort to avoid confusion upon remand, we note that because sovereign immunity and qualified

---

[5] Because "[t]he issue of a government employee's official [or qualified] immunity must . . . be resolved as the threshold issue in a suit against the employee in his personal capacity," *Roberson v. McIntosh County School Dist*., 326 Ga. App. 874, 876 (1) (755 SE2d 304) (2014), we do not address the alternative grounds (proximate cause and/or the public duty doctrine) advanced by the defendants in support of their motion for summary judgment in favor of Starling.

19

immunity are threshold issues that the trial court is required to address *before reaching the merits of any other argument*, the grant of summary judgment as to Starling is reversed in its entirety. Moreover, nothing in our opinion should be interpreted as a commentary on the applicability of sovereign immunity or qualified immunity to the Gattos' claims against Starling.

*Case No. A19A1409*

5. As set out above, in Case No. A19A1409, Atlantic appeals the trial court's denial of its motion to intervene. In its brief on appeal, Atlantic states that it

> only moved to intervene in this lawsuit to respond to the Gattos' arguments concerning insurance coverage and judicial estoppel and to preserve its rights if the [motion for summary judgment] was not granted. An order affirming the grant of [summary judgment] would address Atlantic's concerns. Thus, the only reason to consider this appeal is if this Court reverses the order granting [summary judgment].

Given our holdings in Divisions 1 and 2, supra, Atlantic's appeal of the denial of the motion to intervene as to the City is moot. See *Reliance Equities, LLC v. Lanier 5, LLC*, 299 Ga. 891, 896 (3) (792 SE2d 680) (2016). See also *Bremen Products Co. v. Ledbetter-Johnson Co.*, 109 Ga. App. 573, 574 (136 SE2d 404) (1964) ("an intervention follows the fate of the original petition").

20

Our conclusion as to Starling, however, is different since we have reversed the grant of summary judgment in her favor. The record shows that Atlantic filed its motion to intervene and request for a hearing on October 8, 2018. On October 16, 2018, the trial court issued a notice regarding the motion to intervene, indicating that it would be willing to entertain arguments regarding the motion at the previously scheduled summary judgment hearing on October 23, 2018, but that it would be "receptive to the request of any party for the additional time to respond as allowed by the Uniform Superior Court Rules." On October 17, 2018, the Gattos filed a notice indicating their objection to argument on October 23, 2018, on the motion to intervene, and requesting the full time to respond to the motion. See Uniform Superior Court Rule 6.2. At the October 23, 2018 hearing, the trial court acknowledged that the Gattos had requested the full 30 days to respond to the motion to intervene, but nonetheless allowed Atlantic's counsel to argue the motion in the interest of time, stating that it would allow the Gattos the "full time" to respond to the motion and even request a further hearing, and that it would "not grant [the] motion without an opportunity for [the Gattos] to file a written response." At the conclusion of Atlantic's argument, the trial court reiterated that it would "continue [the motion], let the [Gattos] have an opportunity to respond." Despite this assurance, the trial court

21

issued a written order the very same day, denying the motion to intervene on the ground that Atlantic's interest was "adequately represented by existing parties." Given that we have reversed the grant of summary judgment to Starling, and because the Gattos were not given an opportunity to respond to the motion to intervene, we vacate the trial court's order denying Atlantic's motion to intervene as to Starling and remand the case for further proceedings not inconsistent with this opinion.

*Judgment affirmed in part and reversed in part in Case No. A19A1408. Judgment dismissed as moot in part and vacated in part, and case remanded with direction in Case No. A19A1409. Barnes, P. J., and Mercier, J., concur.*