**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, P. J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 6, 2025**

# In the Court of Appeals of Georgia

A24A1572. LEWIS et al v. CITY OF BRUNSWICK.

MERCIER, Chief Judge.

The Sons of Confederate Veterans[1] filed a lawsuit against the City of Brunswick ("the City"), seeking damages and declaratory relief, regarding a Confederate monument that was removed from Hanover Square in Brunswick.[2] Finding that the Sons of Confederate Veterans' lawsuit was barred by sovereign immunity in part, and

---

[1] The plaintiffs in the underlying lawsuit are named as: Preston D. Lewis and Richard Alan Watson, each individually and by Association; The Thomas Marsh Forman Camp # 485 Sons of Confederate Veterans and by Association The Georgia Division Sons of Confederate Veterans; Jeffrey A. Kilgore, Individually; and Barbara Whorton Smith, Individually. For purposes of clarity, we will refer to the plaintiffs collectively as the Sons of Confederate Veterans.

[2] A prior version of this lawsuit was before us in *Williams v. Harvey*, 366 Ga. App. 395 (883 SE2d 145) (2023), where we affirmed the trial court's dismissal due to lack of standing.

that it failed to state a claim in part, the trial court granted the City's motion to dismiss. The Sons of Confederate Veterans filed this appeal, arguing, among other things, that the trial court erred by dismissing the lawsuit on sovereign immunity grounds. For the following reasons, we affirm.

"We review de novo a trial court's ruling on a motion to dismiss based on sovereign immunity grounds, which is a matter of law." *City of Hapeville v. Sylvan Airport Parking*, 359 Ga. App. 448, 450 (2) (858 SE2d 538) (2021) (citation and punctuation omitted); see also *Spann v. Davis*, 312 Ga. 843, 850 (2) (866 SE2d 371) (2021) ("Georgia courts have no subject matter jurisdiction when sovereign immunity applies[.]") (footnote omitted).

As alleged in the complaint, the facts state that, in 1902, the Ladies Memorial Association erected a monument to lost soldiers of the Civil War in Hanover Square in Brunswick. After the monument was erected, the Ladies Memorial Association dissolved. Plaintiff Thomas Marsh Forman Camp # 485 "spent thousands of dollars in upkeep and restoration of the monument in question."

On May 17, 2022, the City removed the monument from Hanover Square. Thereafter, the Sons of Confederate Veterans served ante litem notice on the City

demanding "damages in this matter in excess of $100,000.00" for the City's removal of the monument and violation of OCGA § 50-3-1. After the City failed to pay their demand, the Sons of Confederate Veterans filed the underlying lawsuit, stating that the monument was publicly owned. Through their lawsuit, the Sons of Confederate Veterans seek damages and a declaratory judgment, where they ask "the court to conduct an evidentiary hearing and require [the City] to provide whatever proof they have that they do not own the monument."

1. The Sons of Confederate Veterans argue that the trial court erred by finding that their lawsuit against the City was barred by sovereign immunity.

"[S]overeign immunity[] provides that the State cannot be subjected to any legal action without its express consent. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX (e)." *Dept. of Transp. v. Mixon*, 312 Ga. 548, 549 (2) (864 SE2d 67) (2021). Municipal corporations are protected by sovereign immunity pursuant to Article IX, Section II, Paragraph IX of the Constitution, unless that immunity is waived by the General Assembly. *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015).[3] See also OCGA § 36-33-1.

---

[3] "The General Assembly may waive the immunity of counties, municipalities, and school districts by law." Ga. Const. of 1983, Art. IX, Sec. II, Par. IX.

"The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." *Ga. Dept. of Labor v. RTT Assoc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016). "Whether a government entity has waived sovereign immunity is a threshold issue and not a mere defense to liability." *Augusta Judicial Circuit Office of the Pub. Defender v. Hodge-Peets*, 370 Ga. App. 819, 820 (899 SE2d 363) (2024) (citation and punctuation omitted). When a party fails to establish a waiver of sovereign immunity, "the trial court must dismiss the complaint pursuant to OCGA § 9-11-12 (b) (1) for lack of subject-matter jurisdiction." Id. (citation and punctuation omitted).

The Sons of Confederate Veterans argue that the City violated OCGA § 50-3-1 (b), by removing the monument from Hanover Square. Pursuant to OCGA § 50-3-1 (b) (2),

> It shall be unlawful for any person, firm, corporation, or other entity to mutilate, deface, defile, or abuse contemptuously any publicly owned monument located, erected, constructed, created, or maintained on real property owned by an agency or the State of Georgia. No officer or agency shall remove or conceal from display any such monument for the purpose of preventing the visible display of the same. A violation of this paragraph shall constitute a misdemeanor.

The Legislature defined the term "Agency," within the subsection, as:

4

any state or local government entity, including any department, agency, bureau, authority, board, educational institution, commission, or instrumentality or subdivision thereof, and specifically including a local board of education, the Board of Regents of the University System of Georgia, and any institution of the University System of Georgia.

OCGA § 50-3-1 (b) (1) (A).

(a) The Sons of Confederate Veterans contend that the City is liable to it for damages, pursuant to OCGA § 50-3-1 (b) (4). Further, they argue that the Legislature waived sovereign immunity in the same subsection. OCGA § 50-3-1 (b) (4) provides that:

> *Any person or entity that damages, destroys, or loses a monument or that takes or removes a monument without replacing it shall be liable for treble the amount of the full cost of repair or replacement of such monument and may be subject to exemplary damages unless such person or entity was authorized to take such action by the public entity owning such monument.* In addition to treble the cost of repair or replacement and possible exemplary damages, the person or entity shall also be liable for the attorney's fees and court costs expended by the public entity owner of the monument or person, group, or legal entity in any action or proceeding required to establish liability and collect amounts owed. Should a public entity owner of the monument or person, group, or other legal entity prevail in any action under this Code section, such prevailing party shall timely pay for the cost of or repair or placement of the monument upon moneys being

collected from the party damaging, destroying, or losing such monument.

OCGA § 50-3-1 (b) (4) (emphasis added).

The statute in question does not provide an explicit waiver of sovereign immunity. Compare OCGA § 33-24-51 (b) ("The sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived as provided in Code Section 36-92-2."[4]); and OCGA § 50-21-23 (a) (Subject to certain exceptions and limitations, "[t]he state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances"). While OCGA § 50-3-1 provides a means for obtaining damages from "[a]ny person or entity" that violates the statute, the statute does not contain a waiver of sovereign immunity. The legislature chose not to create monetary liability for agencies, and we cannot read a waiver of sovereign immunity where there is none. *RTT Assoc.*, 299 Ga.

---

[4] OCGA § 36-92-2 (a) states that "[t]he sovereign immunity of local government entities for a loss arising out of claims for the negligent use of a covered motor vehicle is waived" up to specified monetary limits.

at 87 (3) ("The constitutional provision expressly reserving the power to waive sovereign immunity to the legislature does not allow for exceptions to be created by the courts.") (citation and punctuation omitted). "Nowhere in the statute has the Legislature specifically provided that sovereign immunity has been waived and the extent of such waiver, and, without specific statutory language providing for (1) a waiver of sovereign immunity *and* (2) the extent of such waiver, no waiver can be shown." *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009) (citation, punctuation omitted, emphasis in original); see also *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003) ("This Court has long recognized that sovereign immunity applies to all actions where the State or its departments or agencies is a party, and only the legislature has the authority to enact a law that *specifically* waives a municipality's sovereign immunity.") (footnote, citation and punctuation omitted, emphasis supplied).

Further, "[i]mplied waivers of sovereign immunity are generally disfavored." *Mixon*, 312 Ga. at 550-551 (2) (a). "Although no special or magic words must be used by the legislature when enacting a statutory waiver of sovereign immunity, implied waivers are not favored, and it must be clear from the statute that

7

immunity is waived and the extent of such waiver." *Ga. Lottery Corp. v. Patel*, 353 Ga. App. 320, 322 (836 SE2d 634) (2019). Georgia courts recognize implied waivers "when the implication necessarily arises." *Mixon*, 312 Ga. at 551 (2) (a); See *SJN Properties v. Fulton County Bd. of Assessors*, 296 Ga. 793, 799 (2) (b) (ii) n. 6 (770 SE2d 832) (2015) ("mandamus actions . . . by their very nature may be sought only against public officials" and therefore would be categorically precluded by sovereign immunity if not for implied waiver of sovereign immunity); *City of Rincon v. Ernest Communities*, 356 Ga. App. 84, 86 (1) (846 SE2d 250) (2020) (declaratory relief was not barred by sovereign immunity because the statute stated that "[i]n any proceeding involving the validity of a municipal ordinance or franchise, the municipality shall be made a party and shall be entitled to be heard as a party[,]" which must be interpreted as an implied waiver or it would be rendered meaningless) (citation and punctuation omitted). Here, OCGA § 50-3-1 (b) (4) will not be rendered meaningless in the absence of an implied waiver of sovereign immunity. Instead, if a non-governmental entity or person damaged or removed a monument, that person or entity would be liable for damages. OCGA § 50-3-1 (b) (4). An implied waiver of sovereign immunity is not required in order to give meaning to the statute. Compare *Colon v. Fulton*

*County*, 294 Ga. 93, 96 (1) (751 SE2d 307) (2013) ("[I]n order for the [Georgia whistleblower statute, OCGA § 45-1-4] to have any meaning at all here, it can only be interpreted as creating a waiver of sovereign immunity."), overruled on other grounds by *Rivera v. Washington*, 298 Ga. 770, 778 n.7 (784 SE2d 775) (2016).

In the absence of a necessary implication of an implied waiver of sovereign immunity, Georgia courts have declined to find such a waiver. See *CSX Transp.*, 277 Ga. at 250 (1) (no implied waiver of municipal's sovereign immunity as any such waiver "is expressly reserved to the legislature"); see also *Ga. Dept. of Natural Resources v. Center for a Sustainable Coast*, 294 Ga. 593, 603 (2) (755 SE2d 184) (2014) ("The plain language of OCGA § 12–5–245 does not provide for a specific waiver of governmental immunity nor the extent of such a waiver, and therefore, no waiver can be implied or shown."); *Currid*, 285 Ga. at 188 ("Because the Community Service Act does not contain language providing for an express waiver of a county's sovereign immunity and the extent of such waiver," sovereign immunity was not waived, and the Court declined to find an implied waiver).

As OCGA § 50-3-1 does not contain an explicit waiver of sovereign immunity, nor does such a waiver arise due to necessary implication, we affirm the trial court's

9

dismissal of the Sons of Confederate Veterans' claim for damages due to the City's sovereign immunity.

(b) As to the Sons of Confederate Veterans' declaratory judgment action, the Georgia Constitution contains a partial waiver of sovereign immunity:

> Sovereign immunity is hereby waived for actions in the superior court seeking declaratory relief from acts of the state or any agency, authority, branch, board, bureau, commission, department, office, or public corporation of this state or officer or employee thereof or any county, consolidated government, or municipality of this state or officer or employee thereof outside the scope of lawful authority or in violation of the laws or the Constitution of this state or the Constitution of the United States. Sovereign immunity is further waived so that a court awarding declaratory relief pursuant to this Paragraph may, only after awarding declaratory relief, enjoin such acts to enforce its judgment. Such waiver of sovereign immunity under this Paragraph shall apply to past, current, and prospective acts which occur on or after January 1, 2021.

Ga. Const. of 1983, Art. I, Sec. II, Par. V (b) (1).

"To state a claim for declaratory judgment, a party need only allege the existence of a justiciable controversy in which future conduct depends on resolution of uncertain legal relations." *Cobb County v. Floam*, 319 Ga. 89, 97 (2) (901 SE2d 512)

(2024) (citation and punctuation omitted). See also OCGA § 9-4-2. But, "[w]here the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper[.]" *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999).

Here, the Sons of Confederate Veterans filed their declaratory judgment action asking "the court to conduct an evidentiary hearing and require [the City] to provide whatever proof they have that they do not own the monument." The Sons of Confederate Veterans state that the monument is a public monument, and they do not claim any ownership interest in the monument. The Sons of Confederate Veterans face no uncertainty as to their own future conduct, but rather they seek an adjudication only of issues that will impact the future conduct of the City. See *SJN Properties*, 296 Ga. at 803 (2) (b) (iii). As a declaration of rights would not direct the plaintiffs' future conduct, their claim for declaratory relief cannot be maintained. See id.; *Floam*, 319 Ga. at 101 (2). Accordingly, we affirm the trial court's dismissal of the Sons of Confederate Veterans' declaratory judgment action.

2. Any remaining enumerated errors are rendered moot by our ruling in Division 1.

*Judgment affirmed. McFadden, P. J., and Rickman, P. J., concur.*